**UNITED STATES of America, Appellee,**

v.

**Gary Lloyd BRUCE, Appellant.**

**No. 92–1633.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1992.

Decided Jan. 28, 1993.

Rehearing Denied March 30, 1993.

---

929

Barry V. Voss, Minneapolis, MN, argued, for appellant.

Jeffrey Paulsen, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Gary L. Bruce was convicted of six drug-related crimes. On appeal, he asserts that he should be granted a new trial on all counts or, alternatively, that his conviction on Count III should be reversed and that his sentence should be reduced. We affirm.

I.

Although Bruce was found guilty on six counts, only Counts I through IV are relevant to this appeal. Count I charged that Bruce had attempted to possess with the intent to distribute 275 pounds of marijuana on August 23, 1991, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2. Count II charged that Bruce, Gregory Rosenow, Glenn Magoon, James Douglas, and Robert Ulrie[1] had conspired to distribute and possess with the intent to distribute 275 pounds of marijuana from August 10 to August 23, 1991, in violation of 21 U.S.C. § 846. Count III charged that Bruce had distributed and possessed with the intent to distribute in excess of 2200 pounds of marijuana from March 1987 to July 1991, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count IV charged that Bruce, Rosenow, and Magoon had conspired to distribute in excess of 2200 pounds of marijuana from March 1987 to July 1991, in violation of 21 U.S.C. § 846.

In obtaining Bruce's convictions on Counts III and IV, the government established that Bruce and Rosenow had headed a marijuana distribution conspiracy that spanned the period from 1986 to 1991. Bruce's co-conspirators, Rosenow, Douglas, and Magoon, all testified about the conspiracy and Bruce's involvement in it. Rosenow outlined how he and Bruce would pur-

1. All of the other co-conspirators pled guilty. Rosenow, Magoon, and Douglas agreed to cooperate with and testify for the government in exchange for reduced sentences.

chase marijuana in Arizona, smuggle it back to Minnesota, distribute it, and share and launder their profits. Rosenow estimated that in the course of the conspiracy he and Bruce had purchased and distributed at least 5,665 pounds of marijuana, resulting in a total profit of between $1,500,-000 and $2,000,000. Douglas and Magoon explained how they had been recruited by Bruce and Rosenow to be drug couriers and had smuggled marijuana from Arizona into Minnesota.

In procuring Bruce's convictions on Counts I and II, the government also established that Bruce had taken part in an attempted purchase of marijuana on August 23, 1991. On August 12, 1991, Rosenow entered into a preliminary agreement to buy approximately 275 pounds of marijuana from Ray Espinosa—a former source of Rosenow and Bruce's, who, unbeknownst to Rosenow, had become a confidential government informant. On August 22, Espinosa told Rosenow that he could deliver the marijuana the next day. According to Rosenow's testimony, Rosenow asked Bruce on the morning of August 23 to help finance the transaction because Rosenow lacked sufficient funds to purchase the entire shipment himself. Bruce agreed to contribute $70,000 for the purchase of the marijuana: $40,000 to pay for Bruce's share of one hundred pounds and $30,000 as a loan to Rosenow to pay for part of his share. Around 9:00 p.m. on August 23, Bruce, driving his white Chevrolet Suburban, met Rosenow and Douglas in Hudson, Wisconsin, and delivered the money to them.

After receiving the money from Bruce, Rosenow and Douglas attempted to purchase the marijuana from Espinosa, but were arrested.

Following the arrests, a team of law enforcement officers searched, pursuant to a search warrant, the Bruce residence in Afton, Minnesota. The officers found one loaded revolver under Bruce's bed and another on his bathroom vanity. Additional-

ly, they found marijuana in Bruce's bedroom and in his son Jason's bedroom. Also in Jason's bedroom, they discovered a small scale capable of measuring marijuana and materials used to package marijuana.

The district court[2] sentenced Bruce to five concurrent 210–month sentences on Counts I through V and a concurrent sixty-month sentence on Count VI, a presentencing-guidelines offense.

## II.

■ Through the testimony of his son, Bruce attempted to establish that he had not delivered any money to Rosenow and Douglas in Hudson on the evening of August 23. Jason Bruce testified that he and a female friend left the Bruce residence in his father's Suburban at 8:30 p.m. on August 23 to return some movie videos to a video store in Hudson and returned around 10:00 p.m. On cross-examination, the government asked Jason about his problems in high school, specifically his truancy and failing grades. Bruce objected to this line of questioning as irrelevant, but the district court overruled the objection. Bruce argues that the district court erred in permitting the questioning and that the court's error prejudiced his defense because it allowed the jury to improperly discredit his son's alibi testimony and, consequently, his entire defense. Bruce contends that he should be granted a new trial on all counts.

Assuming, without deciding, that this line of questioning was improper, we conclude that any error in allowing the questioning was harmless. *See* Fed.R.Crim.P. 52(a). The objected-to questioning was brief and discredited Jason's alibi testimony insignificantly, if at all, in comparison to other attacks upon his testimony. For example, although Jason could recall at trial, which was some three months after the event, that he had left the Bruce residence at 8:30 p.m. to return some videos and the exact route he had taken to Hudson, he could not recall which movies he had returned or the store to which he had taken

**2.** The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

them. As the government pointed out on cross-examination, had Jason remembered the store to which he had gone, the government could have verified whether the store had any record of Jason's having returned videos on August 23.

Additionally, Jason's alibi testimony directly conflicted with the testimony of government witnesses regarding the times and manner in which they had observed the Suburban being driven at or near Bruce's house. According to Rosenow and Douglas, they initially met Bruce, driving his Suburban, at approximately 7:45 on the evening of August 23 in Lake Forest, Minnesota. Because Bruce had not brought his money with him to Lake Forest, he had to return to his home, which is about 40 minutes away, to get it. A law enforcement officer who had been conducting surveillance at the Bruce residence corroborated this testimony; he testified that a man arrived at the Bruce residence in a Suburban travelling at a high speed at 8:20 p.m. and hurriedly sped off at 8:50 p.m. Another law enforcement officer testified that at approximately 8:55 p.m. he saw the Suburban, occupied by only one person, speeding towards Hudson. Rosenow and Douglas testified that Bruce delivered the money to them around 9:00 p.m. in Hudson, which is about ten minutes from Bruce's home. The officer conducting surveillance at Bruce's home further testified that the Suburban, with only one person in it, returned to the Bruce residence at 9:50 p.m.

In the light of the foregoing challenges to the truth of his alibi testimony, the aspersions cast on Jason's performance as a student constituted at worst a petty attempt at impeachment that does not warrant reversal of Bruce's convictions.

■ Bruce next argues that his conviction on Count III should be reversed. During the course of the trial, the government read three stipulations to the jury: (1) that the substance found in Gary Bruce's bedroom was 52.9 grams of marijuana; (2) that the substance found in Jason Bruce's bedroom was 579.4 grams of marijuana; and (3) that the substance involved in Counts I and II was 275 pounds of marijuana. The

parties did not stipulate, however, that the approximately 5,665 pounds of alleged marijuana involved in Count III was in fact marijuana.

When the district court instructed the jury on the elements of Count I, it told the jury: "[T]he government and the defendant have stipulated that the materials in question in this case were, in fact, marijuana."

Bruce argues that by giving this instruction the district court in effect told the jury that the parties had agreed that all of the substances involved in this case, including the 5,665 pounds of substance involved in Count III, were marijuana. Bruce maintains that the district court therefore directed a verdict against him on one of Count III's elements, namely, that the substance distributed was in fact marijuana. Bruce concludes that this instruction violated his right to have the government prove each element of each offense beyond a reasonable doubt.

Because Bruce did not object to the instruction at trial, he has waived any objection on appeal, *see* Fed.R.Crim.P. 30, and we will reverse only for plain error, *see* Fed.R.Crim.P. 52(b). We will find plain error in jury instructions only when necessary to prevent a miscarriage of justice. *See, e.g., United States v. Mason,* 902 F.2d 1314, 1316 (8th Cir.1990) (citing *United States v. Roberts,* 844 F.2d 537, 547 (8th Cir.), *cert. denied,* 488 U.S. 867, 983, 109 S.Ct. 172, 534, 102 L.Ed.2d 141, 565 (1988)).

During the trial, the government attorney read and the district court explained the three stipulations to the jury. The stipulation concerning the 275 pounds of marijuana involved in Counts I and II was introduced into evidence as an exhibit and thus was available to the jury during its deliberations. The jury therefore knew what the parties had stipulated to, including the fact that the parties had not stipulated that the substance involved in Count III was marijuana.

Moreover, the district court gave the contested instruction only in connection with Count I. In instructing the jury, the district court went through all six counts, one at a time, and explained their elements.

When the district court instructed the jury on Count I, it gave the disputed instruction before explaining the elements of the count. The district court did not, however, repeat the instruction when it instructed the jury on Count III.

When viewed in the context in which the instruction was given, then, we believe that the jury understood that the district court's instruction referred only to the 275 pounds of substance involved in Counts I and II. In any event, the error, if any, in giving the instruction was not so egregious as to require reversal of the conviction, for we see no miscarriage of justice here.

■ Bruce next attacks his sentence on two grounds. First, he argues that the district court erred by enhancing his base offense level by two levels pursuant to United States Sentencing Guidelines § 2D1.1(b)(1) for possessing a firearm during a drug-related offense. We do not agree. The district court correctly observed that the firearm enhancement should be applied if a weapon was present, "unless it is clearly improbable that the weapon was connected with the offense." *See* U.S.S.G. § 2D1.1, comment. (n. 3). Noting that a loaded revolver had been found under Bruce's bed, the district court found that "it is not clearly improbable that the firearm was connected with the defendant's involvement in the drug conspiracy." In making this finding, the district court did not explicitly state whether it was referring to the conspiracy charged in Count II or in Count IV. We need not decide which particular drug conspiracy the district court was referring to. Enhancement was proper if it was not clearly improbable that the weapon was connected with either conspiracy, for a firearm enhancement is appropriate if a firearm was connected with any drug-related offense of which a defendant has been convicted. *See* U.S.S.G. § 2D1.1(b)(1).

Applying the clear error standard of review, 18 U.S.C. § 3742(e), we conclude that it was not clearly improbable that the firearm found under Bruce's bed was connected with the conspiracy charged in Count II. In doing so, we reject Bruce's contention that the gun could not have been part of the Count II conspiracy because that conspiracy had ended before the gun was found in the Bruce home. The fact that the gun was not found until after the conspiracy was over in July of 1991 does not mean that the gun had not been used during the course of the conspiracy to protect drugs and drug proceeds. According to Jason Bruce's testimony, the gun had been in the house for some time and guns were kept loaded in the house for protection. Moreover, the gun was found loaded and near marijuana, a scale, and packaging materials. *See United States v. Marshall,* 940 F.2d 382, 383 (8th Cir.1991) (per curiam) (upholding a firearm enhancement where weapons were loaded and found near drug paraphernalia); *United States v. Duke,* 935 F.2d 161, 162 (8th Cir.1991) (upholding a firearm enhancement where a revolver, drugs, and scales were found in a home).

■ Second, Bruce objects to the district court's two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for his role as an organizer or supervisor of the drug conspiracy. The court found that although Bruce had not organized the August 1991 conspiracy, Bruce and Rosenow had jointly organized the activity of the earlier drug conspiracy. We will reverse a district court's determination that a defendant was an organizer and supervisor only if it is clearly erroneous. *See* 18 U.S.C. § 3742(e); *see, e.g., United States v. Harry,* 960 F.2d 51, 53 (8th Cir.1992). In the light of the evidence presented at trial, the district court's finding is not clearly erroneous. The government presented considerable evidence that Bruce, along with Rosenow, had organized and operated the first conspiracy. In particular, there was evidence that Bruce had split the conspiracy's significant profits equally with Rosenow, had supervised drug couriers, and had administered the distribution end of the conspiracy.

The convictions and the sentence are affirmed.