UNITED STATES of America, Appellee,

v.

Anthony ROBINSON, Appellant.

No. 93–1871.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1994.

Decided March 28, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied May 13, 1994.

Elene Noonan, Kirkwood, MO, argued, for appellant.

Steven E. Holtshouser, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and ALSOP,* Senior District Judge.

WOLLMAN, Circuit Judge.

Anthony Robinson appeals from his conviction and sentence for possessing cocaine base (crack cocaine) with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Robinson argues that the district court erred in not suppressing an oral admission and a subsequent written statement and in sentencing him. We find that the district court's failure to suppress Robinson's initial statement was harmless error, that the court's admission of his written statement was proper, and that the court did not err in imposing sentence. Accordingly, we affirm.[1]

## I.

Based on information from a confidential informant, Brian Vickers and Bobby Garrett, St. Louis, Missouri, police detectives, began surveillance of the first floor apartment at 4957 Lotus Avenue in St. Louis. They frequently observed Robinson leave the apartment with a small brown paper bag and travel to a residence at 4320 Lexington Avenue, where the detectives had recently recovered a large quantity of cocaine. Robinson would enter the Lexington residence with the bag and exit fifteen to twenty minutes later without it.

On October 8, 1991, Vickers and Garrett obtained a search warrant for the apartment on Lotus Avenue. While they were waiting for additional officers to arrive before executing the warrant, Robinson exited the apartment and drove away. The detectives stopped Robinson's vehicle and informed him that they had a search warrant for his apartment. They asked Robinson if he would accompany them back to the residence, and he agreed to do so. At some point during this exchange, the detectives handcuffed Robinson as a precautionary measure. The detectives transported Robinson back to the apartment in their vehicle.

Detective Vickers found more than forty grams of crack cocaine in a drawer inside the refrigerator in the apartment. Vickers showed Robinson the cocaine and asked if it belonged to him. Robinson admitted that it did. Vickers formally arrested Robinson and advised him of his *Miranda* rights.

Robinson was taken to the police station and placed in an interview room. Prior to questioning Robinson, Vickers and Garrett removed his handcuffs and again advised him of his *Miranda* rights. Robinson indicated that he understood his rights. When questioned about where he had obtained the crack cocaine, Robinson remained silent. The detectives again asked Robinson if the crack was his. Robinson reaffirmed that it was and agreed to make a written statement. He signed a form waiving his *Miranda* rights and then wrote and initialed this statement:

> I, Anthony Robinson, want to make the following statement. That the drugs found in the house, 4957 Lotus, was [sic] mine and that Sha Scott [who lived in the apartment] had no way of knowing they were in the house.

The district court denied Robinson's motion to suppress both his initial admission at the apartment and his subsequent written statement. The government presented both statements in its case-in-chief at Robinson's trial. The jury convicted Robinson, and the

---

* The HONORABLE DONALD D. ALSOP, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Clyde S. Cahill, Senior United States District Judge for the Eastern District of Missouri.

district court sentenced him to ninety-seven months of imprisonment and to four years of supervised release.

## II.

### A. Initial Admission

Robinson argues that the district court should have suppressed his initial admission because it was elicited in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government concedes that Vickers did not administer the *Miranda* warnings to Robinson before he elicited Robinson's admission. The government argues, however, that the warnings were not required because Robinson was not in custody at the time. The district court did not make a finding as to whether Robinson was in custody when he made the statement. Nevertheless, for the purposes of our analysis, we assume that Robinson was in custody and, consequently, that the district court erred in not suppressing Robinson's initial admission.

### B. Written Statement

The admissibility of Robinson's written statement is controlled by *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). In *Elstad*, two sheriff's officers went to Elstad's residence with a warrant to arrest him for the burglary of a neighbor's home. *Id.* at 300, 105 S.Ct. at 1288. When one of the officers told Elstad that he believed that Elstad had been involved in the burglary, Elstad admitted that he had been. *Id.* at 301, 105 S.Ct. at 1289. The officers then transported Elstad to the sheriff's office. Approximately one hour later, Elstad was read his *Miranda* rights for the first time. Elstad indicated that he understood his rights and that he wished to waive them. Elstad then signed a written statement explaining his role in the burglary. *Id.* The trial court suppressed Elstad's initial oral statement, but admitted his written confession. *Id.* at 302, 105 S.Ct. at 1289.

■ In its analysis, the Supreme Court assumed that Elstad's initial statement had been elicited in violation of *Miranda* and therefore had been properly suppressed. In ruling on the admissibility of Elstad's written statement, the Court stated,

> It [would be] an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

*Id.* at 309, 105 S.Ct. at 1293. According to the Court, "[a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* at 314, 105 S.Ct. at 1296.

■ " 'The voluntariness of a confession is a legal inquiry subject to plenary review by the appellate courts.' " *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir.) (quoting *United States v. Wilson*, 787 F.2d 375, 380 (8th Cir.) (citing *Miller v. Fenton*, 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985)), *cert. denied*, 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 *and* 479 U.S. 865, 107 S.Ct. 223, 93 L.Ed.2d 151 (1986)), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987). In determining voluntariness, we examine whether, in light of the totality of the circumstances, the pressures exerted by the authorities overwhelmed the defendant's will. *See, e.g., United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir.1989). Coercive police activity is a necessary predicate to finding that a confession is not voluntary in the constitutional sense. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); *Rohrbach*, 813 F.2d at 144.

■ Robinson argues that his initial admission was involuntary because he made it while handcuffed in the presence of several police officers and immediately after crack

cocaine had been found in the apartment. We find this argument unpersuasive, as Robinson confuses whether he was in custody for *Miranda* purposes with whether he voluntarily made the statement. That Robinson made the statement while handcuffed in the presence of several officers following the discovery of the crack may well demonstrate that he was in custody (as we have assumed for the purposes of this opinion), but does not establish that the statement was made involuntarily. We find no evidence that any improperly coercive tactics were employed to obtain Robinson's admission. We therefore find that the first statement was voluntary.

 Robinson argues that his written statement was involuntary. He first contends that the statement was coerced because Vickers and Garrett elicited it after he had refused to answer questions concerning the source of the crack cocaine. We disagree. When the detectives questioned Robinson about where he had obtained the crack, he simply remained silent. That the detectives then asked him to reaffirm that the crack belonged to him does not demonstrate that they coerced the statement from him. Robinson next contends that the detectives improperly elicited his written statement by exploiting his initial admission. This contention is without merit as well, for we find no evidence that the detectives improperly exploited the unwarned admission to pressure Robinson into waiving his right to remain silent. Accordingly, we find that Robinson's written statement was also voluntary and was therefore admissible under *Elstad.*

 To escape this holding, however, Robinson argues that *Elstad* does not control this case. Relying on *United States v. Carter,* 884 F.2d 368 (8th Cir.1989), he argues that *Elstad* does not apply if an officer intentionally violates *Miranda.* Robinson contends that Vickers, knowing that Robinson was in custody, deliberately violated *Miranda* in order to elicit Robinson's initial admission so that he could later exploit it to obtain a written, warned statement. Robinson did not make this argument before the district

court, however, so we consider it under the plain error standard of review. *See, e.g., United States v. Bruce,* 984 F.2d 928, 931 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 275, 126 L.Ed.2d 226 (1993). We do not reach the question whether *Elstad* applies if an officer intentionally violates *Miranda*'s prophylactic procedures, for we are not convinced that Vickers committed a deliberate violation in this case. The circumstances surrounding Vickers' unwarned question to Robinson reveal that Vickers' question represented no more than an instinctive investigative response to finding the crack, not a planned, manipulative tactic.

Because Robinson's written statement was admissible under *Elstad,* any error in admitting his initial oral admission was harmless beyond a reasonable doubt. *Butzin v. Wood,* 886 F.2d 1016, 1019 (8th Cir.1989), *cert. denied,* 496 U.S. 909, 110 S.Ct. 2595, 110 L.Ed.2d 276 (1990); *United States v. Moore,* 872 F.2d 251, 252 (8th Cir.1989).[2] In light of the evidence, we have no doubt that the jury would have convicted Robinson if it had known only about his written statement instead of both admissions. Accordingly, we affirm the conviction.

### III.

Last, we consider Robinson's sentencing arguments. Robinson argues that the district court erred by not decreasing his offense level for his role in the offense pursuant to section 3B1.2 of the sentencing guidelines and for acceptance of responsibility pursuant to section 3E1.1. Robinson did not raise these arguments before the district court, and therefore we again review only for plain error. *See, e.g., United States v. Klein,* 13 F.3d 1182, 1185 (8th Cir.1994). Having reviewed the record, we find that the district court committed no error, much less plain error, in not decreasing Robinson's offense level on these grounds.

Additionally, Robinson argues that the district court erroneously believed that it lacked the authority to depart downward based on

---

**2.** We note that we recently applied the harmless-error doctrine announced in *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), to an involuntary confession. *See United States v. Jones,* 16 F.3d 275, 279 (8th Cir.1994).

mitigating circumstances. During Robinson's sentencing hearing, the district court made the following statement:

> There's no ground for departure here. I have no way to depart.... I can't depart when we've got a mandatory minimum. I can't depart when we've got 40—40 odd grams of—of crack cocaine because there's no way to take the argument of dilution because the stuff is not diluted. So therefore I'm constrained to impose the sentence required by the guidelines which is severe. The guidelines have a punishment from 97 to 121 months. 97 to 121 months is the least that I can give this defendant. I am going to impose the least that I can give him.

Transcript of Sentencing Hearing on March 25, 1993, at 35. The court further stated: "I have no way to depart. I see no logical legal way to depart. I'm not suppose to be a fool and just say I'm departing for—for no good reason. I've got to have a reason to depart. Show me how to depart and I will consider it." *Id.* at 37.

■ A district court's refusal to exercise its discretion to depart from the applicable guideline range is unreviewable. *See, e.g., United States v. Evidente,* 894 F.2d 1000, 1004 (8th Cir.), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). On the other hand, we may review a district court's conclusion that it lacked the authority to depart. *Id.* at 1005.

■ We have carefully reviewed the district court's comments at the sentencing hearing. The district court expressed its dismay regarding the severe sentences for crack cocaine offenses and their disproportional impact on blacks. The court left no doubt that it did not want to impose what it believed to be the overly severe sentence required by the law in this case. The court then made the above-quoted comments concerning its refusal to depart downward. In light of the court's overall comments and its downward departures in similar cases, we find that the district court clearly knew that it had the discretionary authority to depart downward, fervently wanted to exercise that authority, but could not find a valid reason to do so. Accordingly, we find the district court's refusal to depart unreviewable.

Robinson's conviction and sentence are affirmed.