# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2715

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota |
| Randolph Valentino Kills in Water, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 14, 2001

Filed: June 7, 2002

_____

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Randolph Valentino Kills in Water, Jr. ("defendant") appeals from a final judgment entered in the United States District Court[1] for the District of South Dakota sentencing him to 188 months of imprisonment after pleading guilty to aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a)(1) and 2246(2). See United States v. Kills In Water, No. 3:00CR30072-001 (D.S.D. June 25, 2001). For reversal, defendant argues that the district court erred in (1) imposing a two-level sentencing

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

enhancement for serious bodily injury pursuant to U.S.S.G. § 2A3.1(b)(4)(B) and (2) imposing a four-level sentencing enhancement for abduction of the victim pursuant to U.S.S.G. § 2A3.1(b)(5).   For the reasons discussed below, we affirm.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. §§ 1153.[2] Jurisdiction in this court is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

On May 25, 2000, defendant was drinking alcohol with a group of people in the Soldier Creek Community on the Rosebud Indian Reservation.  The group included, among others, Damon Has Horns ("co-defendant"), the thirteen-year-old victim, and the victim's mother.  When the group ran out of alcohol, the victim and her mother accompanied defendant and co-defendant on a trip to a house on the reservation where they bought bootleg liquor.  Afterwards, the group separated and the victim and her mother went home.

Defendant, co-defendant, and a juvenile went to the victim's home.  The victim left her house to walk around with them.  As they were walking, defendant repeatedly put his arm around the victim, and would not allow her to move away.  When she did move away, he forced her to walk in front of him.  Eventually they arrived at some basketball courts where they drank more alcohol and smoked marijuana.  The victim claims that she was not smoking or drinking at that time, although she had been drinking earlier.

---

[2]18 U.S.C. § 1153 provides federal jurisdiction for offenses committed by Indians in Indian country, including violations of 18 U.S.C. § 2241(a)(1) and 2246(2).

The group left the basketball courts and went to a nearby abandoned trailer. The victim claims that she indicated that she wanted to go home and started to walk away, but that defendant ran in front of her, picked her up by her waist, dragged her to the trailer, and lifted her up stairs and inside the trailer while she tried to jump out. Defendant and co-defendant claim that the victim accompanied them into the trailer voluntarily. The United States Probation/Pretrial Services Officer, Sandra McKee, after reviewing the FBI and police reports and interviewing the victim, defendant, and co-defendant, concluded that the victim was forced inside the trailer.

Defendant admits that inside the trailer, he and co-defendant forcibly raped the victim both vaginally and anally. During the course of the rape, as defendant held her down, co-defendant bit the victim on her neck, arm and stomach. The victim finally was able to escape. Shortly after the victim returned home, the Rosebud Tribal Police arrested defendant.

A physical examination of the thirteen-year-old victim on June 5, 2000, revealed abrasions and irritation of the vagina, multiple areas of acute disruption of the hymen, and damage to the perianal area, all consistent with a penetrating injury. In 2001, the victim attempted suicide by taking an overdose of pills, and was treated at a psychiatric care facility. She continues to experience recurring nightmares and takes medication for them. She also receives ongoing psychological counseling.

On March 26, 2001, defendant agreed to plead guilty to aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a)(1) and 2246(2).[3] A Presentence Investigation Report ("PSIR") was ordered. The government objected that the PSIR's sentencing recommendation did not include (1) a two-level enhancement for serious

---

[3]The indictment defined aggravated sexual abuse as "knowingly caus[ing] and attempting to cause [victim] to engage in a sexual act by using force against her person."

bodily injury pursuant to U.S.S.G. § 2A3.1(b)(4)(B) or (2) a four-level enhancement for the victim's abduction pursuant to U.S.S.G. § 2A3.1(b)(5).

At the sentencing hearing on June 28, 2001, the district court considered the enhancements proposed by the government. The parties also discussed whether the serious bodily injury enhancement automatically applied to all defendants who commit violations of 18 U.S.C. §§ 2241(a)(1) and 2246(2). Relying on the Sentencing Commission's advice,[4] the district court concluded that, while the serious bodily injury enhancement did not automatically apply in this case, it was nonetheless warranted as a result of the biting, the victim's injuries to the vaginal and perianal area, and the victim's ongoing psychological problems and need for counseling. The district court categorized the victim's abuse as "torture" and commented that the injuries sustained by the victim were "in addition to what anyone would sustain from a forcible rape. This is one of the more outrageous sexual assaults that I have seen." Additionally, the district court decided to apply the abduction enhancement, reasoning that the victim had been moved by force into the trailer where the rape occurred, thus justifying the application of § 2A3.1(b)(5).

The district court sentenced defendant to 188 months of incarceration, a $100 special assessment, $2,500 in restitution to the victim, and five years of supervised release. This appeal followed.

---

[4]In a phone conversation during Probation/Pretrial Services Officer McKee's preparation of the PSIR, the Sentencing Commission clarified that the enhancement should not apply automatically to all cases of aggravated sexual abuse.

## Discussion

I.  The Serious Bodily Injury Enhancement

We review the district court's factual findings in a sentencing decision for clear error and its application of the guidelines *de novo*.  See United States v. Petersen, 276 F.3d 432, 436 (8th Cir. 2002).

Defendant argues that the district court erred in imposing a two-level enhancement for serious bodily injury under U.S.S.G. § 2A3.1(b)(4)(B) because (1) the act of rape, as an offense of criminal sexual abuse, was not sufficient to warrant an additional enhancement and (2) the injuries sustained by the victim were not sufficient to constitute additional injuries exceeding the usual injuries sustained by any rape victim.

Section 2A3.1(b)(4)(B) increases a defendant's base offense level by two levels "if the victim sustained serious bodily injury" during a crime categorized as aggravated sexual abuse pursuant to 18 U.S.C. § 2241(a) or (b).    Guideline Application Note 1(j) to U.S.S.G. § 1B1.1 defines serious bodily injury as:

> [i]njury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.  In addition, "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law.

In addition, the commentary to § 2A3.1(b) provides that serious bodily injury "means conduct other than criminal sexual abuse, which already is taken into account in the base offense lever under subsection (a)."  U.S.S.G. § 2A3.1, comment. (n.1).

This court's recent opinion in <u>United States v. Guy</u>, 282 F.3d 991, 996 (8th Cir. 2002), prohibited using the serious bodily injury enhancement to enhance a sentence for criminal sexual abuse in the absence of other factors warranting the enhancement. As a result, defendant correctly maintains that the enhancement may not be applied on the basis of his conviction for aggravated sexual abuse alone.

However, the court in <u>United States v. Guy</u> also determined that the enhancement may be applied if the district court specifically finds that the victim suffered long lasting bodily or mental impairment. <u>See</u> <u>id.</u> at 996-97. In the present appeal, the district court did not automatically apply the serious bodily injury enhancement. Instead, the district court specifically relied on the victim's bite marks,[5] her physical trauma to the vaginal and perianal areas, her continued psychological problems such as recurring nightmares and attempted suicide, and her ongoing need for psychological counseling, as the basis for concluding that the victim suffered serious bodily injury. <u>See</u> <u>id.</u> at 994 n.1 (noting that "courts ha[ve] applied the serious bodily injury enhancement under U.S.S.G. § 2A3.1(b)(4) in rape cases where the victim suffered mental impairment and psychological trauma") (citing <u>United States v. Scott</u>, 985 F.2d 576 (9th Cir. 1993) (unpublished opinion) (interpreting serious bodily injury to include psychological harm alone)"; <u>United States v. Wallace</u>, 976 F.2d 734 (6th Cir. 1992) (unpublished opinion) (same)); <u>United States v. Yankton</u>, 986 F.2d 1225, 1229 (8th Cir. 1993) ('[a]s defined in the

---

[5]Defendant argues that the bite marks should not be considered in assessing his sentence because the co-defendant, not he, actually bit the victim during the rape. However, we agree with the district court's conclusion that defendant's participation in the biting by holding the victim down while his co-defendant bit her is sufficient to render defendant liable for the resultant bite marks during sentencing. <u>See</u> <u>United States v. Baca-Valenzuela</u>, 118 F.3d 1223, 1232 (8th Cir. 1997) (determining that "aiding and abetting a crime of violence is the same as commission of the crime as a principal for purposes of enhanced sentence") (citing <u>United States v. Simpson</u>, 979 F.2d 1282, 1285 (8th Cir. 1992)). In any event, the bite marks constitute only one of many traumatic injuries sustained by the victim.

guidelines, serious bodily injury easily includes any immediate serious physical trauma resulting from a rape"); see, e.g., United States v. Bruguier, 161 F.3d 1145, 1148 (8th Cir. 1999) (deeming injuries to a baby's thigh bone, leg and perineum to constitute serious bodily injury under U.S.S.G. § 2A3.1(b)(4)); United States v. Rodgers, 122 F.3d 1129, 1133 (8th Cir. 1997) (considering injuries leading to hospitalization or mental rehabilitation, as well as mental trauma including nightmares, to be serious bodily injuries according to U.S.S.G. § 1B1.1 comment. (n.1(j))).

Defendant also contends that the enhancement should not apply because the victim only received injuries that are "normal" for rape victims, and therefore do not constitute serious bodily injury in excess of the aggravated sexual abuse charge. In considering whether the injuries sustained by the victim were the type of injuries normally experienced by rape victims, the district court concluded that "these injuries are in addition to what anyone would sustain from a forcible rape. This is one of the more outrageous sexual assaults that I have seen." Because we defer to the district court's factual findings when reviewing its application of the guidelines, we conclude that the injuries as defined are sufficient to constitute serious bodily injury. See United States v. Guy, 282 F.3d at 995 ("[t]he district court's factual findings under the guidelines are reviewed with appropriate deference because of its greater familiarity with the factual record") (citing Buford v. United States, 532 U.S. 59, 65-66 (2001)). Further, we agree with the district court's legal conclusion that such injuries justify application of the § 2A3.1(b)(4)(B) enhancement for serious bodily injury. See United States v. Yankton, 986 F.2d at 1229 (categorizing physical trauma resulting from rape as serious bodily injury).

II.    The Abduction Enhancement

Section 2A3.1(b)(5) authorizes a four-level sentencing enhancement for violations of 18 U.S.C. § 2241(a) or (b) if the victim was abducted. Guideline

Application Note 1(a) to U.S.S.G. § 1B1.1 explains that abduction "means that a victim was forced to accompany an offender to a different location." The commentary illustrates this definition by providing an example: "[f]or example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction." Id.

Defendant argues that the district court erred in imposing the abduction enhancement because the victim voluntarily accompanied defendants to the trailer. Defendant asserts that, because the rape took place at the trailer, no force was used to take the victim to "a different location" as required by the guidelines. However, the district court made a specific factual finding that, although the victim was not forced to accompany defendant to the trailer, defendant forced her inside the trailer where the rape occurred. Moreover, the district court found that the force used by defendant to get the victim inside the trailer included chasing her, picking her up by the waist, dragging her to the trailer, and lifting her up stairs and inside the trailer, despite her resistance. In drawing this conclusion, the district court reasonably relied on the testimony of Sandra McKee, the Probation/Pretrial Services Officer, who reviewed the FBI and police investigation reports and interviewed the victim, defendant, and co-defendant in this case. The district court did not clearly err in determining that defendant forced the victim into the trailer just prior to the rape.

Further, we agree with the district court's legal conclusion that defendant's behavior during the rape constitutes an abduction within the meaning of the guidelines. See U.S.S.G. § 1B1.1 comment. (n.1(a)). We find the commentary's getaway car example to be instructive: In that example, abduction occurs when a bank robber forces a victim of the robbery to another, physically close location, where the victim's ability to escape is impaired. Likewise, the victim in the present appeal was physically forced to another, physically close location where her ability to escape was greatly impaired.

The fact that defendant was successful in subduing the victim's attempts to escape by dragging her to the inside of the trailer further justifies this conclusion. We will uphold a § 2A3.1(b)(5) enhancement for an abduction in situations where "the perpetrator's ability to isolate the victim increases the likelihood that the victim will be harmed." United States v. Saknikent, 30 F.3d 1012, 1013 (8th Cir. 1994). In this case, defendant's ability to isolate the victim inside the trailer certainly increased the likelihood of harm to the victim, as the victim's escape was impeded and she was brutally raped once inside the trailer.

As a result, we hold that the district court did not err in applying the four-level sentencing enhancement for abduction of the victim authorized by § 2A3.1(b)(5).

**Conclusion**

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.