# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-1019

———————

United States of America,       *

                          *

        Appellee,       *

                          *    Appeal from the United States

    v.                   *    District Court for the

                          *    Northern District of Iowa.

Andre Tyrone Griffith,       *

                          *

        Appellant.       *

———————

Submitted: June 13, 2002

Filed: September 4, 2002

———————

Before MORRIS SHEPPARD ARNOLD, HEANEY and MURPHY, Circuit Judges.

———————

HEANEY, Circuit Judge.

Andre Tyrone Griffith appeals his convictions for possession of stolen firearms and being a felon in possession of firearms. He argues that he was denied a fair trial because of improper questions and remarks made by the prosecutor. Griffith also appeals his sentence, alleging that the district court[1] erred when it determined that

———————

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa. Judge Melloy was sworn in as a judge on the Eighth Circuit Court of Appeals on February 26, 2002.

his prior felony conviction for conspiracy to commit theft in the second degree constituted a violent felony pursuant to 18 U.S.C. § 924(e). We affirm.

## I. BACKGROUND

Griffith was charged with possessing stolen firearms and being a felon in possession of a firearm as a result of events which took place in October of 2000. On the evenings of October 16 and 17, 2000, Ross Hrycyshyn, Jason Schmidlen, Rondell Cropp, Adam Langer, Shannon Kies, and Sara Berry assisted in the burglary of the Taylor Gun Store in Marion, Iowa. Twenty-six handguns and three long guns were reported stolen.

The next day, Schmidlen, Hrycyshyn, and an acquaintance named Rod Schneider agreed to try to sell the guns to friends of Schneider, including Bob Knight. Schmidlen, Hrycyshyn, and Schneider traveled to Knight's apartment. While they were there, Griffith arrived and expressed an interest in acquiring and selling the guns. Later, Griffith and others traveled to Schneider's house to retrieve approximately twenty guns. Together, these individuals traveled to several apartments to meet individuals who were interested in purchasing the guns. Griffith then traveled with others to a nearby convenience store to meet another potential buyer, while Schneider and an acquaintance returned to Knight's apartment. After Griffith's party arrived at the convenience store, Griffith called his friend Tommy Thomas to arrange for a ride. When Thomas arrived, Griffith informed his party that Thomas was a potential buyer, and took the guns into Thomas's vehicle. Thomas and Griffith then fled with the guns, which were never retrieved.

On January 12, 2001, a two-count indictment was filed charging Griffith with possessing firearms as a felon and with possessing stolen firearms. On June 20, 2001, following a one and one-half day jury trial, a jury found Griffith guilty of both counts. The district court sentenced Griffith to 120 months imprisonment on count one and

240 months imprisonment on count two, with the terms to run concurrently. This appeal followed.

II. DISCUSSION

A.

Griffith argues that prosecutorial misconduct occurred on seven separate occasions during the prosecutor's questioning of witnesses and during his closing argument. Because Griffith did not object to the prosecutor's conduct at trial, we review for plain error. "Under plain error, the question for determination is whether the argument was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice." United States v. Mora-Higuera, 269 F.3d 905, 912 (8th Cir. 2001) (quoting United States v. Segal, 649 F.2d 599, 604 n.10 (8th Cir. 1981)). "Plain error review is extremely narrow and is limited to those errors which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." United States v. Beck, 250 F.3d 1163, 1166 (8th Cir. 2001).

Griffith claims that the district court committed plain error by not granting a mistrial when Hrycyshyn testified that Griffith had threatened him while they were in jail together. We find no such error. Although Griffith may have preferred that the jury remain unaware of his incarceration, this disclosure was not so egregious as to warrant a new trial. Moreover, Griffith's alleged threat towards Hrycyshyn was admissible to show consciousness of guilt. See United States v. DeAngelo, 13 F.3d 1228, 1232 (8th Cir. 1994) (noting that this court has ruled a number of times that evidence of death threats against witnesses or other parties cooperating with the government is generally admissible against a criminal defendant to show consciousness of guilt of the crime charged).

Next, Griffith contends that the government improperly requested that Hrycyshyn vouch for the veracity of Schneider by asking Hrychyshyn: "[I]f [Schneider] says he gave you a gun -- sold you a gun, he's telling the truth?"  Trial Transcript at 260.  The district court did not commit plain error by allowing this question.  "It is fundamental that where the defendant 'opened the door' and 'invited error'" there is ordinarily no reversible error.  United States v. Beason, 220 F.3d 964, 968 (8th Cir. 2000) (quoting United States v. Steele, 610 F.2d 504, 505 (8th Cir. 1979).  In the present case, Griffith's attorney opened the door to the prosecutor's line of questioning during Hrycyshyn's cross-examination when he asked: "[I]f Ross [sic] Schneider says you did not have a handgun, he's lying?"  Id.  The government reasonably responded to this question in order to clarify whether Schneider was lying when he testified that he gave Hrycyshyn a gun.  We find that the reference to Schneider's truthfulness did not undermine the fairness of Griffith's trial.[2]

Griffith also argues that the prosecutor made several improper comments during his closing argument.

> This circuit has set forth a two-part test for reversible prosecutorial misconduct: 1) the prosecutor's remarks or conduct must have been improper; and 2) such remarks or conduct must have prejudicially affected defendant's substantial rights so as to deprive him of a fair trial. If this court reaches the second step, the factors we consider are: 1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court.

United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000).

---

[2]Griffith also contends that the prosecutor acted improperly when he asked an allegedly leading question to induce a witness to identify Griffith in open court. After reviewing the record, we find that Griffith is not entitled to relief on this claim.

In the present case, Griffith's attorney did not object to the comments that form the basis for his current contentions. This makes it difficult to determine whether the district court allowed the comments because he considered them to be proper or because he concluded that prejudice simply did not attach. Nevertheless, for purposes of our review, the critical question remains whether the argument of which Griffith complains was so offensive as to deprive him of a fair trial. See id.

A review of the record in this case reveals that the evidence submitted by the government was sufficiently strong to warrant conviction, regardless of the alleged impropriety of the prosecutor's remarks. Approximately seven witnesses offered testimony which demonstrated that Griffith was in possession of stolen guns on October 17, 2001. Several of the witnesses had not met each other, or Griffith, until the trial, and despite the numerous attempts of Griffith's attorney to discredit these witnesses, their testimony was accepted by the jury.[3] Griffith has failed to demonstrate that his rights to a fair trial were prejudicially affected by the prosecutor's comments.

## B.

Griffith also argues that the district court erred in finding that he was an armed career criminal for purposes of a sentence enhancement. Under U.S.S.G. § 4B.1.4(a), a defendant who is subject to an enhanced sentence under § 924(e) is an armed career criminal. In the present case, Griffith was convicted for being a felon in possession

---

[3]Also, we note that the district court instructed the jury that the statements and comments of the prosecutor are not evidence. Trial Transcript at 82. Because jurors are presumed to follow their instructions, this provides further evidence that Griffith suffered no prejudice as a result of the prosecutor's allegedly improper remarks. Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

of one or more firearms, in violation of 18 U.S.C. § 922(g). Section 924(e) provides a term of imprisonment of "not less than fifteen years" for any person convicted under § 922(g) who has three previous convictions for "a violent felony or a serious drug offense." The district court determined that Griffith qualified for a sentence enhancement under § 924(e), in part, because he was convicted in an Iowa court for conspiring to take property valued in excess of $1,000 from two individuals. In determining that this was a violent felony, the district court looked at the original criminal complaint, which charged Griffith with both conspiracy to commit theft in the second degree, and robbery in the second degree, instead of relying solely on Griffith's conspiracy conviction and the statutory definition of that offense. Griffith contends that the district court erred in this respect. Griffith also contends that the district court improperly found conspiracy to commit theft to be a crime of violence. We disagree.

We review de novo a district court's determination that a prior offense constitutes a crime of violence under § 924(e). See U.S. v. Abernathy, 277 F.3d 1048, 1051 (8th Cir. 2002). In determining whether a prior conviction is a violent felony for purposes of sentence enhancement under § 924(e), a sentencing court may look beyond the fact of conviction and the statutory definition of the offense to other sources such as the charging documents. See United States v. Maddix, 96 F.3d 311, 314 (1996). In the present case, the district court looked to the charging documents from the Iowa state court, which charged Griffith with robbery in the second degree, and conspiracy "to take property from Christy Jackson and [C]asey Waddell." Government Sentencing Exhibit 66, at 6. Griffith contends that the district court erred by considering the documents detailing the charge of robbery in the second degree, because he was not convicted for this offense. We need not address this argument, because we conclude that Griffith's conviction for conspiracy to commit theft is sufficient to trigger § 924(e)'s sentence enhancement.

Under 18 U.S.C. § 924(e)(2)(B), a "violent felony" is defined, in part, as conduct "that presents a serious potential risk of physical injury to another. . . ." See also U.S.S.G. 4B1.2(1) (defining "crime of violence" as "any offense . . . [that] involves conduct that presents a serious risk of physical injury to another."). In United States v. Payne, 163 F.3d 371, 374-375 (6th Cir. 1998), a panel of the Sixth Circuit Court of Appeals concluded that the offense of larceny from a person fell within this definition. The Court reasoned as follows:

> Michigan law interprets "from the person" narrowly to require that the property be taken from the possession of the victim or be taken from within the immediate presence or area of control of the victim. This is clearly the type of situation that could result in violence. Any person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence. Whether or not violence or harm actually results in any given instance is not relevant. We agree with the First Circuit that "although larceny from the person 'typically involves no threat of violence,' the risk of ensuing struggle is omnipresent."

Id. at 375 (quoting United States v. DeJesus, 984 F.2d 21, 24 (1st Cir. 1993); see also United States v. Wofford, 122 F.3d 787, 794 (9th Cir. 1997) (holding that theft from a person constitutes a violent felony under § 924(e)); United States v. Hawkins, 69 F.3d 11, 13 (5th Cir. 1995) (holding that theft from a person is a crime of violence because it involves a substantial risk of injury to the person from whom the property is taken).

We agree with the reasoning of those courts that have held that the crime of theft from a person involves conduct that presents a serious risk that a person may be physically injured. In the present case, Griffith was charged with conspiracy to take property from two individuals, and was ultimately convicted of conspiracy to commit

theft in the second degree.[4] By its very nature, this crime involved a substantial risk that the victims of Griffith's conspiracy would be harmed when their property was taken from them. The district court did not err when it concluded that Griffith's conviction for conspiracy to commit theft made him eligible for an enhanced sentence under § 924(e). See United States v. Johnson, 962 F.2d 1308, 1311 (8th Cir. 1992) ("conspiracy to commit a crime of violence is itself a violent crime").

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Under Iowa law, a person commits theft when the person "[t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." Iowa Code § 714.1(1).