# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1196

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　 *
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of South Dakota.
Marlon Dale Sun Bear, a/k/a　　　*
Dale Sun Bear, a/k/a Ben James, 　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　*

_____

Submitted: August 21, 2002

Filed: October 17, 2002
_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.
_____

RILEY, Circuit Judge.

Marlon Dale Sun Bear (Sun Bear) was charged with committing and aiding and abetting second degree murder, a violation of 18 U.S.C. §§ 1111, 1153 & 2. After Sun Bear pled guilty, the district court[1] determined he qualified as a career offender and sentenced him to 360 months in prison. On appeal, Sun Bear argues that he should not have been sentenced as a career offender. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

## I. BACKGROUND

On May 9, 2001, Sun Bear spent the day drinking beer and smoking marijuana. In the evening, he began arguing with his uncle, Cordell Sun Bear (Cordell), over which of them would get to drink a can of beer. The argument turned into a fight. With the help of a friend, Lambert Gunhammer (Gunhammer), Sun Bear got the better of his uncle. He and Gunhammer kicked Cordell in the head and beat him repeatedly with a metal bar. Sun Bear and Gunhammer continued to beat Cordell after he was unconscious. Sun Bear then placed his uncle on a basement mattress where Cordell died of multiple injuries.

After Sun Bear pled guilty, the probation office issued a presentence investigation report (PSR) listing a total offense level of 32 and a criminal history category VI. The government objected that the PSR did not apply the career offender guideline, U.S.S.G. § 4B1.1 (2000). The district court then notified the parties that it would consider sentencing Sun Bear as a career offender and would also consider departing upward based on the inadequacy of Sun Bear's criminal history category.

At sentencing, the district court determined that three of Sun Bear's prior adult convictions were felony crimes of violence. The three offenses were (1) an attempted escape in 1995 in Sheridan County, Nebraska; (2) an attempted theft in 1997 of an operable vehicle in Cedar City, Utah; and (3) an attempted burglary in 1995 of a commercial building in Gordon County, Nebraska. Based on these convictions, the district court found that Sun Bear is a career offender and increased his offense level to 37. See U.S.S.G. § 4B1.1.

After decreasing Sun Bear's offense level for acceptance of responsibility, the district court departed upward, back to an offense level of 37, based on its determination that criminal history category VI understated the seriousness of Sun Bear's criminal history. The district court then sentenced Sun Bear at the bottom of the guideline range to 360 months in prison.

On appeal, Sun Bear challenges only the district court's application of the career offender guideline. He argues that none of the three prior convictions relied upon by the district court is a felony crime of violence.

## II. DISCUSSION

We review a district court's factual findings for clear error and its application of the sentencing guidelines de novo. United States v. Randolph Valentino Kills in Water, 293 F.3d 432, 435 (8th Cir. 2002). If a sentencing argument was not properly presented below, we review the district court's decision related to that argument for plain error. United States v. Robinson, 20 F.3d 320, 323 (8th Cir. 1994).

Under the sentencing guidelines, a "career offender" receives a higher offense level than defendants who are otherwise similarly situated. See U.S.S.G. § 4B1.1. A defendant is a career offender if: (1) he was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony crime of violence or a felony controlled substance offense; and (3) he has been convicted at least twice before for a felony crime of violence or a felony controlled substance offense. Id. The first two of these elements plainly apply to Sun Bear's case. The overriding issue presented on appeal is whether at least two of Sun Bear's prior convictions were for felony crimes of violence.

### A. Attempted Escape

On August 4, 1995, Sun Bear pled guilty to attempted escape in Sheridan County, Nebraska. His offense involved running from law enforcement officers who were investigating him for criminal mischief. The only document the government produced as evidence of this conviction was the criminal complaint filed against Sun Bear in Sheridan County. The complaint alleged that Sun Bear did "employ force and threat in an attempt to unlawfully remove himself from official detention," and listed the violation as a "Class I Misdemeanor." According to the PSR, Sun Bear pled guilty to this offense and was sentenced to 180 days in jail.

In the Eighth Circuit, we have held that every escape from custody is a crime of violence. See United States v. Nation, 243 F.3d 467, 472 (8th Cir. 2001) (following cases from other circuits). Under the career offender guideline, if a completed offense is a crime of violence, then an attempt to commit that offense is also a crime of violence. See U.S.S.G. § 4B1.2, cmt. n.1. Sun Bear does not contend that his attempted escape was not a crime of violence. Instead, he argues that the attempted escape he was charged with was only a misdemeanor under Nebraska law.

Under Nebraska law, escape itself is a felony. Generally, it is a Class IV felony – the lowest felony class under Nebraska law. See Neb. Rev. Stat. § 28-912(4). However, when the escapee "employs force, threat, deadly weapon, or other dangerous instrumentality to effect the escape," the crime becomes a Class III felony. See Neb. Rev. Stat. § 28-912(5)(b).

Sun Bear was charged only with attempted escape. In Nebraska, an attempt to commit a crime is generally classified one level below the actual crime attempted. See Neb. Rev. Stat. § 28-201(4). Thus, if Sun Bear was charged with attempting a Class III felony escape, his attempted escape would be a Class IV felony. If Sun Bear was charged only with attempting a Class IV felony escape, his attempted escape would be a Class I misdemeanor.

The best place to learn what a defendant was charged with is ordinarily the charging document itself. See United States v. Smith, 171 F.3d 617, 620-21 (8th Cir. 1999). In this case, though, the complaint filed against Sun Bear is equivocal. In charging that Sun Bear did "employ force and threat in an unlawful attempt to remove himself from official detention," the complaint suggests that Sun Bear attempted to commit a Class III felony, and that his attempt was therefore a Class IV felony. However, the complaint goes on to identify Sun Bear's crime as a "Class I Misdemeanor," which would have been appropriate if Sun Bear were charged with attempting to commit a Class IV felony escape.

The government had the burden of proving the facts to support a career offender enhancement by a preponderance of the evidence. See United States v. Williams, 905 F.2d 217, 218 (8th Cir. 1990). The government might have met this burden by producing the judgment of conviction from Sheridan County, Nebraska. The judgment presumably identifies the offense to which Sun Bear ultimately pled guilty and whether that offense was a felony or a misdemeanor. If the judgment had been produced, it would likely have clarified the serious ambiguity in the record before the district court.

In the absence of such evidence, and given the government's burden of proof, it is impossible to conclude that Sun Bear's attempted escape was a felony. In light of the complaint's ambiguous language, it is at least as likely that Sun Bear was charged with a misdemeanor as with a felony. Even if Sun Bear was charged with a felony attempted escape, he may have pled guilty to a misdemeanor under a plea agreement. The sentence Sun Bear actually received – 180 days in prison – is consistent with either a misdemeanor or a felony. Given the wholly inconclusive state of the record before the district court, Sun Bear's conviction for attempted escape cannot be treated as a felony for purposes of the career offender enhancement.

The issues surrounding this conviction were not well presented at Sun Bear's sentencing hearing. The attorneys who handled the case below (both different lawyers than those who argued the appeal) did not inform the district court about Nebraska's criminal classification scheme. As a result, the district court was led to believe, erroneously, that Sun Bear's attempted escape was punishable as if it were a completed offense. Because the district court was not presented with this crucial aspect of Nebraska law, its ruling may be subject to review only for plain error. See Robinson, 20 F.3d at 323. Even under the de novo standard we must affirm Sun Bear's sentence. As we explain below, Sun Bear's two remaining convictions were felony crimes of violence and thus support the district court's determination that Sun Bear is a career offender.

## B.    Attempted Theft

On November 10, 1997, Sun Bear pled guilty to attempted theft of an operable vehicle in Cedar City, Utah, and was sentenced to prison for zero to five years.  This offense was a violation of section 76-6-404 of the Utah Code and an undisputed felony.  We need only determine whether it was a crime of violence.

The guidelines divide "crimes of violence" into two categories.  An offense falls into the first category if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  An offense falls into the second category if it "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).  The commentary to section 4B1.2 lists several additional offenses as crimes of violence, but does not list vehicle theft.  U.S.S.G. § 4B1.2, cmt. n.1. However, as the commentary explains, an unlisted offense is a crime of violence when the conduct with which the defendant has expressly been charged, "by its nature, presented a serious potential risk of physical injury to another."  Id.

Although we have never addressed whether vehicle theft is a crime of violence, two other courts of appeal have considered the issue.  The Fifth Circuit, sitting en banc, recently held that a defendant's conviction for motor vehicle theft in Texas was not a crime of violence.  United States v. Charles, 301F.3d 309, 313-14 (5th Cir. 2002) (en banc).  After examining the indictment, which charged the defendant with appropriating and operating an automobile without the owner's consent, the Fifth Circuit found a risk of injury to property, but no serious potential risk of injury to another person.  Id.  Similarly, the Sixth Circuit has held that an aggravated motor vehicle theft, as defined by Colorado law, may not be a crime of violence.  United States v. Crowell, 997 F.2d 146, 149 (6th Cir. 1993).

Simple theft of a motor vehicle does not have injury or potential injury to others as one of its essential elements. However, in evaluating the risks entailed by a crime, we must also examine the likely consequences of its commission. See United States v. Griffith, 301 F.3d 880, 885 (8th Cir. 2002) (holding that theft from a person is a crime of violence). And we must examine these likely consequences in the light of common sense. See Charles, 301 F.3d at 315 (Barksdale, J., dissenting).

Our Eighth Circuit precedents reflect this common sense approach to determining whether a given offense is a crime of violence. For example, we have held that burglary of a commercial building is a crime of violence under the guidelines. See United States v. Peltier, 276 F.3d 1003, 1006 (8th Cir. 2002). In reaching this conclusion, we relied on United States v. Solomon, 998 F.2d 587, 590 (8th Cir. 1993), a case decided under 18 U.S.C. § 924(e)(2)(B), which held that such a burglary "imposes a serious risk of harm to occupants, returning occupants, or interested passersby." See United States v. Hascall, 76 F.3d 902, 904 (8th Cir. 1996). In addition, we have held that "every escape, even a so-called 'walkaway' escape," is a crime of violence." Nation, 243 F.3d at 472. The "variety of supercharged emotions" an escapee is likely to experience, including the fear of being captured, have led us to conclude that every escape is "a powder keg" with "the serious potential" to "explode into violence." Id. (citing United States v. Gosling, 39 F.3d 1140, 1142 (10th Cir. 1994)).

Theft of a vehicle presents a likelihood of confrontation as great, if not greater, than burglary of commercial property, and it adds many of the dangerous elements of escape. The crime begins when a thief enters and appropriates a vehicle, a time when he is likely to encounter a returning driver or passenger, a passerby, or a police officer, any of whom may be intent on stopping the crime in progress. As we observed in Solomon, an encounter between the thief and such a person carries a serious risk of violent confrontation. See Solomon, 998 F.2d at 589. Once the thief drives away with the vehicle, he is unlawfully in possession of a potentially deadly

or dangerous weapon. See United States v. Yates, No. 02-1108, 2002 WL 31119116, at \*4 (8th Cir. Sept. 26, 2002). While he is absconding in the vehicle, with which he will probably be unfamiliar, the thief may be pursued or perceive a threat of pursuit. Under the stress and urgency which will naturally attend his situation, the thief will likely drive recklessly and turn any pursuit into a high-speed chase with the potential for serious harm to police or innocent bystanders. Under the precedents in our Circuit, these serious potential risks compel a holding that the theft or attempted theft of an operable vehicle is a crime of violence under section 4B1.2 of the guidelines.

The Supreme Court's decision in Taylor v. United States, 495 U.S. 575 (1990), does not change our analysis. In Taylor, the Court was interpreting 18 U.S.C. § 924(e)(2)(B), a statute with language almost identical to U.S.S.G. § 4B1.2. In so doing, the Court reasoned that the term "burglary" in 18 U.S.C. § 924(e) does not include crimes which involve breaking into an automobile. See Taylor, 495 U.S. at 599, 602. The decision in Taylor, however, left the government "free to argue that any offense – including offenses similar to generic burglary – should count toward enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another' under § 924(e)(2)(B)(ii)." Id. at 600 n.9. Today we decide that vehicle theft meets the similar definition in section 4B1.2.

### C. Attempted Burglary

On January 6, 1995, Sun Bear pled guilty to the attempted burglary in Gordon County, Nebraska, in violation of section 28-507 of the Nebraska Revised Statutes. There is no dispute that this offense was a felony. Although the building Sun Bear attempted to enter was a laundry and not a residence, burglary of commercial property is a crime of violence in this Circuit. Peltier, 276 F.3d at 1006; Hascall, 76 F.3d at 906. Sun Bear invites us to reconsider this rule, but we cannot overrule the decision of a prior panel. Peltier, 276 F.3d at 1006. His conviction for attempted burglary thus qualifies as a crime of violence.

## III. CONCLUSION

Two of the three convictions the district court used to enhance Sun Bear's sentence – the attempted theft of a vehicle in Cedar City, Utah, and the attempted burglary in Gordon County, Nebraska – are crimes of violence under U.S.S.G. § 4B1.2. With these two convictions in his past, Sun Bear qualifies as a career offender under U.S.S.G. § 4B1.1. Accordingly, the judgment of the district court is affirmed.

MELLOY, Circuit Judge, dissenting.

I agree with the majority's treatment of Sun Bear's prior convictions for attempted escape and attempted burglary of a commercial building. I disagree, however, with the majority's conclusion that Sun Bear's prior conviction for attempted auto theft is a crime of violence under U.S.S.G. § 4B1.2. Accordingly, I would reverse the district court and find the government failed to prove Sun Bear should be sentenced as a career offender.

> A "crime of violence" is defined in U.S.S.G. § 4B1.2 as:
>
> (a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2. The Utah statute under which Sun Bear was convicted does not require the use of physical force for a conviction. Compare Utah Code Ann. §§ 76-6-404 (theft statute) with Utah Code Ann. § 76-6-301(1) (robbery statute, which requires force). Thus, U.S.S.G. § 4B1.2(a)(1) is not implicated. At issue is whether Sun Bear's attempted theft of an operable vehicle falls within U.S.S.G. § 4B1.2(a)(2)

as a crime "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another." See also U.S.S.G. § 4B1.2, cmt. n.1 ("[O]ffenses are included as 'crimes of violence' if . . . the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted[,] . . . by its nature, presented a serious potential risk of physical injury to another.").

In Utah, attempted theft of an operable motor vehicle is a third degree felony punishable by up to five years imprisonment. Utah Code Ann. §§ 76-6-404, 76-6-412(1)(a)(ii), 76-4-102, 76-3-203(3). The Utah theft statute provides that "[a] person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Utah Code Ann. § 76-6-404. Theft of an operable motor vehicle is not a separate crime under Utah law. Rather, it is a category that is used to define the penalty. Utah Code Ann. § 76-6-412(1)(a)(ii). The district court relied solely on these statutes when it determined that Sun Bear's attempted theft offense qualified as a crime of violence for purposes of U.S.S.G. § 4B1.1. Other information, such as the charge or indictment, the judgment, or police report, was not provided to the district court.

In support of the district court, the Government argues, and the majority agrees, that when a defendant attempts to steal an operable motor vehicle the risk of physical injury to others is the same as in the case of escape or burglary. See United States v. Nation, 243 F.3d 467, 472 (8th Cir. 2001) (concluding that all escapes present a potential risk of injury to others such that they should be classified as crimes of violence); United States v. Hascall, 76 F.3d 902, 904 (8th Cir. 1996) (finding that second degree burglary of a commercial building is a crime of violence because of the serious potential risk of physical injury to others). Based on circuit precedent, the majority adopts a rule which provides that attempted theft of an operable motor vehicle is always a crime of violence because the conduct underlying the offense presents a serious potential risk of physical injury to another. I do not agree that our

prior holdings mandate this conclusion and I believe such a rule extends this court's reasoning in <u>Nation</u> and <u>Hascall</u> too far.

While comparison in this area is a speculative enterprise, I do not believe that attempted auto theft presents the same risk of injury to others as those offenses we have previously designated crimes of violence.  <u>See</u> <u>United States v. Griffith</u>, 301 F.3d 880, 885 (8th Cir. 2002) (concluding that the offense of theft from a person is a "violent felony" which "involves conduct that presents a serious risk that a person may be physically injured"); <u>Nation</u>, 243 F.3d at 472 (stating that all escapes should be classified as crimes of violence); <u>Hascall</u>, 76 F.3d at 904  (characterizing burglary of a commercial building as a crime of violence).  In a commercial burglary there is always a risk that, unknown to the burglar, the building is occupied.  Such surprise is unlikely in an attempted auto theft and, if present, would typically result in a more serious charge.  <u>Cf.</u> <u>United States v. Jernigan</u>, 257 F.3d 865, 866-67 (8th Cir. 2001) (holding that negligent homicide conviction for operating a vehicle while intoxicated or under the influence constitutes a crime of violence).  The risks attendant to attempted auto theft are also distinguishable from those associated with theft from a person which, by its nature, requires close proximity to a victim.  <u>See</u> <u>Griffith</u>, 301 F.3d at 885 (quoting with approval the Sixth Circuit's observation that "[a]ny person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence" (citation omitted)).  And finally, attempted auto theft does not necessarily implicate law enforcement response in the same way that attempted escape does.

All felons fear apprehension in the midst of, and following, their criminal conduct, and all may act recklessly when attempting to evade capture.  But not all felonies may be read into the "otherwise" clause of section 4B1.2(a)(2).  Significantly, even felonies which present a "potential risk" of injury to others are expressly excluded from the definition.  Instead, only those which present a "*serious potential risk*" warrant designation as crimes of violence for career offender purposes.

Under Utah's criminal code, scenarios involving theft but not violence are unlimited. See, e.g., State v. Larocco, 794 P.2d 460 (Utah 1990) (defendant convicted under Utah Code Ann. § 76-6-404 where a car salesman allowed the defendant to take a car for an unaccompanied test drive and the defendant failed to return the car or pay for it); State v. Seekford, 638 P.2d 525 (Utah 1981) (defendant convicted under Utah's general theft statute where he failed to return rental car). Given this, I do not believe it should be categorically held that every attempted auto theft presents the serious potential risk mandated by U.S.S.G. § 4B1.2(a)(2).

In a recent decision, a majority of the Fifth Circuit held that "simple motor vehicle theft," by its nature, does not involve conduct that presents a serious potential risk of physical injury to another. United States v. Charles, 301 F.3d 309, 312-14 (5th Cir. 2002) (en banc). The facts of Charles are nearly identical to those at issue here. The defendant appealed the district court's determination that theft of a vehicle is a crime of violence under § 4B1.2(a)(2). Id. at 311. The general statute under which the defendant was convicted defined theft as "unlawfully appropriat[ing] property with the intent to deprive the owner of property." Id. at 313 (citing Tex. Pen. Code § 31.03(a)). In addition, the defendant's indictment from his motor vehicle theft offense was made available. Id.

Before making a determination as to the theft offense, the Fifth Circuit held:

> Based on the language in § 4B1.2(a)(2) and in Application Note 1, . . . a crime is a crime of violence under § 4B1.2(a)(2) only if, from the face of the indictment, the crime charged or the conduct charged presents a serious potential risk of injury to a person. Injury to another person need not be a certain result, but it must be clear from the indictment that the crime itself or the conduct specifically charged posed this serious potential risk.

Id. at 314. The Fifth Circuit then reviewed the defendant's prior theft offense. It concluded that although the defendant's conduct presented a risk of injury to property, there was "no suggestion in the indictment that [the defendant's] conduct in stealing the car presented a serious potential risk of physical injury to another person." Id. Thus, it found that the defendant's prior theft offense was not a crime of violence. Id. In so finding, the Fifth Circuit offered the following explanation: "Application Note 1, by requiring that other crimes must 'by [their] nature' present a 'serious potential risk of physical injury to another,' calls for a categorical inclusion or exclusion of crimes and/or conduct. Simple motor vehicle theft does not, by its nature, present this risk." Id.

I agree with the Fifth Circuit's reasoning in Charles and would hold that attempted theft of an operable motor vehicle is not a crime of violence. See also United States v. Crowell, 997 F.2d 146, 149 (6th Cir. 1993) (holding that aggravated motor vehicle theft, as defined by Colorado law, is not, per se, a crime of violence).

For these reasons, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.