# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3109

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Edith Madora Hudson, also known | * | |
| as Edith Madora Spicer, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 16, 2005
Filed: July 15, 2005

———————

Before WOLLMAN, HANSEN, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Edith Hudson was convicted of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court[1] determined that Hudson had been convicted previously of three qualifying violent felonies for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e), and

———————

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

sentenced her accordingly to the mandatory minimum term of fifteen years' imprisonment. Hudson appeals her conviction and sentence, and we affirm.

I.

The firearm charge against Hudson was initiated after Minneapolis police, responding to a report of a vehicle idling in the middle of the street, found Hudson sleeping in the driver's seat. Hudson exited the vehicle, and officers recovered a pistol from her waistband. Hudson was a convicted felon, and the government obtained an indictment that charged her with violating the statute that prohibits possession of firearms by felons, 18 U.S.C. § 922(g)(1). Hudson was convicted following a jury trial.

In challenging her conviction, Hudson argues that the district court erred when it precluded her from presenting evidence of a "necessity" or "justification" defense at trial. Hudson was a street prostitute, and during the course of her activities, she twice had been picked up by a rogue police officer who drove her to isolated locations and photographed her in the nude. Hudson testified that she later "heard on the street" that a police officer was looking for her, and she assumed that it was the same rogue officer, although it turned out that the officer in question was an internal affairs officer who was investigating the rogue officer. According to Hudson, she feared that the rogue officer was going to kill her, and her defense at trial was that she planned to brandish the weapon to frighten the rogue officer. Hence, the argument goes, she was justified in possessing the firearm because the possession was necessary to prevent a greater harm, *i.e.*, serious injury or death to Hudson at the hands of the rogue officer.

This circuit has not recognized a defense of legal justification to a violation of § 922(g). *E.g.*, *United States v. Thompson*, 403 F.3d 533, 536-37 (8th Cir. 2005). We find again in this case that we need not resolve whether such a defense is available

in the context of § 922(g), because we agree with the district court that Hudson failed to present sufficient evidence in support of such an instruction, even assuming it is generally available.

Where available, the defense of justification requires the defendant to establish several elements:

> In general, to establish a justification defense a defendant must show that: 1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; 2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act; 3) that he had no reasonable, legal alternative to violating the law; and 4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

*United States v. Lomax*, 87 F.3d 959, 961 (8th Cir. 1996).

We have said that a defendant is entitled to a jury instruction concerning an available justification defense if she shows "an 'underlying evidentiary foundation' as to each element of the defense, 'regardless of how weak, inconsistent or dubious' the evidence on a given point may seem." *United States v. Kabat*, 797 F.2d 580, 590-91 (8th Cir. 1986) (quoting *United States v. Goss*, 650 F.2d 1336, 1345 (5th Cir. 1981)). "We have never held, however, that a defense must be submitted to the jury even when it cannot be said that a reasonable person might conclude the evidence supports the defendant's position." *Kabat*, 797 F.2d at 591 (internal quotations omitted). We review *de novo* a district court's decision whether there is sufficient evidence to submit an affirmative defense to a jury. *United States v. Jankowski*, 194 F.3d 878, 882 (8th Cir. 1999). In this case, we agree with the district court that Hudson failed to present sufficient evidence for at least the first and third elements

of the justification defense, and thus a justification instruction was unwarranted as a matter of law.

To prove the first element, Hudson was required to show that she was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury. The district court found that, even if Hudson believed that her life was in danger, that belief was unreasonable, because there was no indication that the rogue officer made any threats to harm Hudson, let alone to kill her. As the Fourth Circuit has explained, "[w]hether a defendant's principal motivation for carrying a firearm is genuine is not the critical inquiry, for generalized fears will not support the defense of justification. A defendant must show that a real and specific threat existed *at the time of the unlawful possession*." *United States v. Perrin*, 45 F.3d 869, 874 (4th Cir. 1995) (internal quotations omitted) (emphasis in original).

We agree with the district court that the evidence does not establish that Hudson was under an imminent threat of harm at the time of her arrest. There was no showing that the rogue officer threatened to harm or kill Hudson. Hudson had moved from the area of the city where she was approached by the officer, and there was no evidence that he ever attempted to contact her in this new territory. At most, therefore, Hudson had a generalized fear of the rogue officer based on rumors that she misinterpreted. This is insufficient to satisfy the first element required for a justification instruction.

The third element of the defense requires the defendant to establish that she had no reasonable, legal alternative to violating the law to establish the third element. "[I]f there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm," the third element required for a justification instruction has not been satisfied. *United States v. Bailey*, 444 U.S. 394, 410 (1980) (internal quotations omitted). One reasonable alternative

-4-

for Hudson was to report her alleged fear of the rogue officer to responsible law enforcement authorities. The district court found, however, that Hudson did not immediately go to the police, and that when she did, she complained only about the rogue officer's photography and not about any fear of injury or death.

We recognize that police corruption may create an understandable reluctance on the part of the citizenry to have confidence in the police, but we cannot endorse the proposition that the behavior of a single rogue officer authorizes a convicted felon to possess a firearm under the circumstances of this case. Other alternatives were reasonably available. The record demonstrates that the police department, through its internal affairs bureau, was prepared to take action against the rogue officer, and Hudson acknowledged communication about the problem with an officer whom she characterized as a "good cop." (Hrg. Tr., 1/19/04, at 23). There is likewise no indication that Hudson made any effort to seek assistance from other entities independent of the police, such as the local sheriff, federal or state law enforcement agencies, or community groups. *Cf. United States v. Gomez*, 92 F.3d 770, 773-77 (9th Cir. 1996). And given our conclusion that Hudson did not have an objectively reasonable basis to fear imminent harm, the district court aptly observed that she had yet another reasonable alternative: "She could not have gotten the gun. She could have stayed where she was." (Hrg. Tr., 1/19/04, at 50).

Assuming that a justification defense is available in a prosecution under § 922(g), we agree with the district court that Hudson failed to produce sufficient evidence to warrant a jury instruction on the defense. We thus conclude that Hudson's conviction should be affirmed.

II.

In a challenge to her sentence, Hudson argues that her prior conviction for felony theft from a person should not count as one of the three predicate "violent

felony" convictions that triggers the mandatory minimum sentence of the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e). We review *de novo* whether a prior offense constitutes a violent felony under § 924(e). *United States v. Childs*, 403 F.3d 970, 971 (8th Cir. 2005).

Hudson pled guilty to "felony theft from a person" in Minnesota in 1992. (PSR ¶ 32).[2] The criminal complaint alleged that Hudson had grabbed an elderly woman's purse from her hand and fled the scene, only to be pursued by a male witness. (*Id*.) The complaint further alleged that while the male witness restrained Hudson until police arrived, she bit the man's thumb and caused it to bleed. (*Id*.)

An offense constitutes a "violent felony" for purposes of § 924(e) if it "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). We held in *United States v. Griffith*, 301 F.3d 880, 885 (8th Cir. 2002), that the crime of theft from a person qualifies as a violent felony. We explained that this offense "involves conduct that presents a serious risk that a person may be physically injured," and reasoned that "[b]y its very nature, this crime involve[s] a substantial risk that the victims . . . would be harmed when their property was taken from them." *Griffith*, 301 F.3d at 885. We borrowed from the Sixth Circuit's cogent analysis of the offense as follows:

---

[2]The Minnesota statute in effect at the time provided that a person commits the offense of theft if she "intentionally and without claim of right takes, uses transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property." Minn. Stat. § 609.52, subd. 2(1). Such an offense was punishable by imprisonment of not more than five years, and/or a fine of not more than $10,000, if the value of the property taken was not more than $500, and if "the property [was] taken from the person of another or from a corpse, or grave or coffin containing a corpse." Minn. Stat. § 609.52, subd. 3(3)(d)(i).

> This is clearly the type of situation that could result in violence. Any person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence. Whether or not violence or harm actually results in any given instance is not relevant. We agree with the First Circuit that although larceny from the person typically involves no threat of violence, the risk of ensuing struggle is omnipresent.

*Id.* at 885 (quoting *United States v. Payne*, 163 F.3d 371, 375 (6th Cir. 1998)) (internal quotations omitted).

Hudson argues that in light of *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004), we should revisit *Griffith* and conclude that a conviction for theft from a person does not qualify as a violent felony. In *Leocal*, the Supreme Court held that felony driving under the influence causing serious bodily injury is not a "crime of violence" within the meaning of a different statute, 18 U.S.C. § 16. Hudson argues that the Court's reasoning in *Leocal*, which distinguished between actively employing physical force against another person and negligently or accidentally causing harm, undermines the holding in *Griffith*.

We are not persuaded that *Leocal* effectively overrules *Griffith*. *Leocal* interpreted a different statutory term ("crime of violence") with a different operative definition. "Crime of violence," for purposes of the statute at issue in *Leocal*, means "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another *may be used* in the course of committing the offense." 18 U.S.C. § 16(b) (emphasis added). Focusing on the text of this provision, the Supreme Court reasoned that because the formulation required a substantial risk that force "may be *used*," the statute required a higher *mens rea* than accidental or negligent conduct. The Court then concluded that the ordinary meaning of "crime of violence," together with the definition's emphasis on the "use"

of force, suggested "a category of violent, active crimes" that does not include driving while intoxicated. 125 S. Ct. at 383.

Section 924(e), by contrast, defines "violent felony" in terms of the possible effect of a person's conduct: the question is whether the offense "involves *conduct that presents* a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). In a telling footnote, the Court in *Leocal* suggested this very distinction. The Court observed that "crime of violence" in § 16(b) "does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct," and explained that "the 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct." 125 S. Ct. at 383 n.7. The Court contrasted § 16(b) with the definition of "crime of violence" in USSG § 4B1.2(a)(2), which is similar to the definition of "violent felony" in § 924(e), and which includes "*conduct that presents* a serious risk of physical injury to another." USSG § 4B1.2(a)(2) (emphasis added). We believe that the differing texts of § 16(b) and § 924(e) demonstrate that the analysis in *Griffith* properly focused on the possible effect of the conduct of a person who commits theft from a person. We thus conclude that the analysis of *Leocal* does not undermine our governing precedent.

Hudson's remaining arguments concerning her sentence are without merit. We disagree that our court's "categorical approach" to determining which crimes qualify as "violent felonies" under § 924(e) is an unconstitutional usurpation of a legislative function that violates the non-delegation doctrine. Our cases, including *Griffith*, simply interpret and apply the language that Congress enacted in § 924(e)(2)(B)(ii), and this is a proper function of the judiciary. *See United States v. Mohr*, 407 F.3d 898, 902 (8th Cir. 2005). We have rejected Hudson's contention that § 924(e) is unconstitutionally vague. *Childs*, 403 F.3d at 972. And we have held that the determination whether a particular offense of conviction satisfies the definition of "violent felony" is a legal matter for the court that does not require judicial fact-

finding prohibited by the Sixth Amendment. *United States v. Patterson*, No. 04-1178, 2005 WL 1123555, at *2 (8th Cir. May 13, 2005).

The judgment of the district court is affirmed.

_____