# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1786

_____

United States of America,

        Plaintiff - Appellee,

v.

Adrian Morin,

        Defendant - Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the District of
\*  North Dakota.
\*
\*
\*

_____

Submitted: December 14, 2005
Filed: February 14, 2006 (Corrected 2/16/06)

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Adrian Steven Morin appeals the judgment of the district court[1] entered after he pleaded guilty to conspiracy to distribute and to possess with intent to distribute in excess of 500 grams of a substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He argues that his sentence violated the Ex Post Facto Clause and the Fifth and Sixth Amendments of the United States Constitution. He also asserts that the district court made numerous errors in calculating the applicable

_____

[1] The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

range under the United States Sentencing Guidelines (the "Guidelines"), and that the district court improperly considered certain statements while calculating that range. We affirm.

I.

Morin was one of thirteen defendants charged in a fifty-count indictment. Morin entered into a plea agreement on August 30, 2004. The plea agreement required the government to dismiss five counts against Morin, but allowed each party to argue any issue related to Morin's sentence. A sentencing hearing was held on December 10, 2004, and, because of issues related to Blakely v. Washington, 542 U.S. 296 (2004), all parties agreed to delay sentencing until after the United States Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005). At sentencing on February 25, 2005, the government submitted Morin's confession, jailhouse recordings of Morin, various investigative reports, and grand jury testimony of several co-conspirators. The district court reviewed these materials and the Presentence Investigation Report.

The district court concluded that Morin's base offense under the Guidelines was a 38. It added a two-level increase for possession of a firearm and a four-level increase for being a leader, organizer or manager. U.S.S.G. §§ 2D1.1(b), 3B1.1(a). It also allowed a three-level reduction for acceptance of responsibility. U.S.S.G. § 3C1.1. The district court determined that with a net offense level of 41 and a criminal history of category I, the applicable Guidelines range was 324 to 405 months. It stated that the Guidelines were advisory and that it considered the sentencing factors laid out in 18 U.S.C. 3553(a). The district court then varied 60 months from the low end of

the Guidelines range and sentenced Morin to 264 months,[2] five years supervised release, and a $100 special assessment. Morin filed a timely appeal.

## II.

Morin appeals a number of aspects of his sentence. He argues that, because of uncertainty in the law at the time he entered his plea, his sentence was imposed in violation of the Fifth and Sixth Amendments and the Ex Post Facto Clause of the United States Constitution. He also asserts that the district court made the following errors in sentencing: improperly considering certain statements made by Morin, finding that Morin possessed a dangerous weapon, determining that Morin was an organizer or leader, and erroneously calculating the drug quantity attributed to Morin. We address these arguments in turn.

*Booker Arguments*

Morin entered a plea agreement post-<u>Blakely</u> and pre-<u>Booker</u>, but was sentenced post-<u>Booker</u>. Because of the timing of his plea, Morin contends that it was improper for the district court to impose sentence enhancements that are permissible under <u>Booker</u> but which he claims were impermissible under <u>Blakely</u>. He specifically claims that his sentence violates the Fifth and Sixth Amendments and the Ex Post Facto Clause. These arguments are without merit. We have previously rejected the argument that when a plea was entered into post-<u>Blakely</u> and pre-<u>Booker</u>, sentence enhancements cannot be based on facts found by a judge. <u>United States v. Salter</u>, 418 F.3d 860, 862 (8th Cir. 2005). Morin acknowledged at his plea hearing that he faced the possibility of life imprisonment for the crime he admitted. He was ultimately

---

[2] This sentence was to run concurrently with another sentence previously imposed for a separate conviction.

sentenced to 264 months. As such, he cannot now claim that his plea was unknowing or that he did not have fair warning about the possible length of the penalty imposed.

Morin also argues that his sentence was in violation of Booker because the district court did not properly treat the Guidelines as advisory. This argument is without merit. Although the district court acknowledged the importance of the Guidelines, it stated that it treated the Guidelines as advisory. The record indicates that the district court considered other section 3553(a) factors. Additionally, the district court sentenced Morin below the low end of the recommended Guidelines range.

*Sentence Enhancements*

In calculating Morin's sentence, the district court considered a variety of evidence including a tape-recorded confession of Morin and jailhouse recordings of several of Morin's phone calls. Morin asserts that the confession was improperly obtained after he requested counsel. Morin also asserts that the jailhouse conversations were communications obtained without a warrant and thus are inadmissible.

The district court rejected Morin's first argument because it believed Morin's testimony that he requested an attorney was not credible. "A district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility." United States v. Killingsworth, 413 F.3d 760, 763 (8th Cir. 2005). We find no clear error in the district court's credibility finding in this case. Because Morin had not requested an attorney, his confession was admissible despite being given without an attorney present. Dormire v. Wilkinson, 249 F.3d 801, 805 (8th Cir. 2001) (holding that the right to counsel is invoked only when "a suspect clearly and unambiguously makes known his [or her] desire to have counsel present") (internal quotations omitted).

-4-

The district court rejected Morin's second argument because it found that Morin impliedly consented to the taping of his jailhouse calls. United States v. Horr, 963 F.2d 1124, 1126 (8th Cir. 1992) (finding that an inmate impliedly consented to the monitoring of his calls–despite his inability to refuse such monitoring– because he was aware of the prison's monitoring policy). Morin had been given a prisoners' handbook which informed him that his jailhouse calls would be monitored. There were also signs above the phones in the prison informing him of this fact. We agree with the district court that these recorded conversations would have been admissible at trial. As such, the district court was able to properly rely on them at sentencing.[3]

The district court relied on Morin's statements described above, as well as additional evidence, and imposed a two-level increase for possession of a firearm and a four-level increase for being a leader, organizer, or manager. U.S.S.G. §§ 2D1.1(b), 3B1.1(a). We review each of these enhancements for clear error. United States v. Johnson, 47 F.3d 272, 277 (8th Cir. 1995). "Section 2D1.1(b)(1) provides for a two-level enhancement for possession of a dangerous weapon 'unless it is clearly improbable that the weapon was connected with the offense.'" United States v. Dillard, 370 F.3d 800, 804 (8th Cir. 2004) (quoting U.S.S.G. § 2D1.1 at cmt. n.3). Section 3B1.1 provides for a four-level enhancement when a "defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).

"As a 'general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he [or she] may consider, or the source from which it may come.'" United States v. Wallace, 408 F.3d 1046, 1047-48 (8th Cir. 2005) (quoting Nichols v. United States, 511 U.S. 738, 747 (1994)). In addition to Morin's statements, the district court relied on grand

---

[3] Because we agree with the district court that these statements would have been admissible at trial, we need not address the government's argument that Morin waived any right to object to these statements at sentencing by entering a guilty plea.

jury testimony in making its determination that the dangerous weapon enhancement applied. One person testified that Morin possessed a firearm while selling her methamphetamine. Although this testimony is hearsay, "[h]earsay evidence is admissible in sentencing as long as it bears some indicia of reliability." Id. The grand jury testimony in this case has indicia of reliability because it was given under oath and subject to the penalties of perjury. See United States v. Williams, 10 F.3d 910, 914-15 (1st Cir. 1993). The testimony has an additional indicium of reliability in that it comes from multiple witnesses who described Morin's involvement with various firearms. In many cases, the grand jury testimony is also corroborated by Morin's own statements. As such, we find the testimony sufficiently reliable to be used for the purposes of sentencing. Therefore, there is no clear error in the district court's application of the dangerous weapon enhancement.

With respect to the organizer or leader enhancement, Morin does not dispute that the conspiracy involved more than five participants and was extensive. Rather, he claims he was not an organizer or leader. We have said that those terms are to be interpreted broadly. United States v. Thompson, 210 F.3d 855, 861 (8th Cir. 2000). We have also said that for the enhancement to apply, at least five people must have been involved in the operation, but only one of those people needs to have been under the defendant's direction.[4] United States v. Rodriguez, 112 F.3d 374, 377 (8th Cir. 1997). The grand jury testimony in the record indicates that Morin directed one or more of his co-conspirators to distribute drugs on his behalf. As such, there is no clear error in the district court's finding that Morin directed the actions of one or more members of the conspiracy.

---

[4] Morin argues that the district court did not properly distinguish between the four-level enhancement for being an organizer or leader under U.S.S.G. § 3B1.1(a) and the three-level enhancement for being a manager or supervisor under U.S.S.G. § 3B1.1(b). After a careful review of the record we are confident that the district court correctly understood and applied U.S.S.G. § 3B1.1(a).

We review the district court's factual findings of a drug quantity for clear error. United States v. Johnston, 353 F.3d 617, 625 (8th Cir. 2003). "We can disturb the district court's drug quantity calculation only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Titlbach, 300 F.3d 919, 923 (8th Cir. 2002). "[I]n a drug conspiracy, the district court may consider amounts from drug transactions in which the defendant was not directly involved if those dealings were part of the same course of conduct or scheme." United States v. Mickelson, 378 F.3d 810, 821-22 (8th Cir. 2004). "In order to attribute a quantity of drugs to a defendant, the sentencing court is required to find by a preponderance of the evidence that the activity involving those drugs was in furtherance of the conspiracy and either known to that defendant or reasonably foreseeable to him [or her]." Id. at 822. The evidence relied on by the district court establishes that Morin was involved in a conspiracy and that he knew or that it was reasonably foreseeable to him that the conspiracy involved in excess of 15 kilograms of a mixture containing methamphetamine. The record contains grand jury testimony from a number of Morin's co-conspirators establishing that Morin knew or reasonably should have known that the conspiracy involved that quantity of drugs. That testimony has indicia of reliability. Thus, the district court did not err in calculating the drug quantity and setting Morin's base offense level at 38.

III.

For the foregoing reasons, we affirm the sentence imposed by the district court.

_____