# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2914

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Tommy Lee Poe, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 11, 2006
Filed: April 6, 2006

_____

Before WOLLMAN, JOHN R. GIBSON, and ARNOLD, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Tommy Lee Poe appeals from his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Based on his criminal history, he was classified as an armed career criminal under 18 U.S.C. § 924(e), and the district court[1] sentenced him to 235 months' imprisonment. Poe argues that the district court erred in refusing to instruct the jury on his proposed affirmative defense of justification. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

At approximately 6:10 a.m. on May 18, 2003, the Bettendorf, Iowa Police Department received a 911 call from Michelle Scott. Scott reported that Poe, her boyfriend, had stolen a weapon from her the previous day and was now standing outside her apartment building. She said she was afraid to go outside, and then told the dispatcher that Poe had entered the basement of her building. Three police officers responded to the scene and entered the basement, where they found Poe standing under the stairs. The officers handcuffed Poe, removed him from the building, and then searched the rest of the basement. They found a yellow plastic bag between some two-by-fours near the water heater, approximately 10 feet from where Poe had been standing. The bag contained a Smith and Wesson .38 caliber revolver and .38 ammunition.

After receiving <u>Miranda</u> warnings, Poe stated that he would speak to Sergeant Fink. According to Fink, Poe initially denied any knowledge of the weapon, but then explained that he and Scott had an argument the night before and she had pointed the gun at him and threatened him. Poe told Fink that he took the gun from Scott, removed it overnight, and returned it to the apartment that morning. The officers also interviewed Scott, who denied pointing the weapon at Poe the previous night.

Poe was charged with possessing a firearm on or about May 18, 2003 in violation of 18 U.S.C. § 922(g)(1). He filed a notice stating that he intended to present a justification defense and moved that the jury be instructed to consider the defense. In his brief before the district court, Poe argued that the only issue in the case would be his defense of justification and admitted that he "possessed a firearm on or about the night of May 17, 2003 perhaps continuing until the early morning hours of May 18, 2003." In the brief, Poe provided an account of the events that differed from what he initially told the police at the scene. He claimed that he hid the gun in the basement when he left Scott's apartment on the night of May 17, rather than keeping

it overnight. He stated that he returned the following morning "to retrieve work boots he had in the basement and, if Ms. Scott had calmed sufficiently, to perhaps return her gun to her." After considering briefs from Poe and the government, the district court ruled prior to trial that an instruction on the justification defense was not warranted.

Scott's trial testimony presented a different version of events from the one she recounted to the police. She stated that the reason she called the police and denied pulling the gun on Poe was because she was angry that he was leaving her for his ex-wife and she wanted to "hurt him." She then admitted to pulling her gun out during the argument with Poe in an effort to prevent him from leaving. She testified that Poe grabbed the gun from her, told her she was crazy, and immediately left the apartment. She testified that she saw Poe go down into the basement before leaving, and that Poe later called her to tell her the gun was in the basement. Scott said she tried to correct her story with the police, but was unable to get in contact with Sergeant Fink and was also concerned that she could go to jail for admitting that she pulled the gun on Poe.

At the close of all the evidence, defense counsel again requested an instruction on justification, which the district court denied. The jury returned a verdict of guilty.

## II.

A district court has broad discretion when formulating jury instructions, and a defendant is entitled to a requested instruction only if "it correctly states the law and is supported by the evidence." United States v. Johnson, 278 F.3d 749, 751-52 (8th Cir. 2002). Whether there is sufficient evidence to support the submission of an instruction on an affirmative defense is a question of law which we review de novo. United States v. Hudson, 414 F.3d 931, 933 (8th Cir. 2005).

Although the Eighth Circuit has never recognized justification as a defense to a violation of § 922(g), United States v. Luker, 395 F.3d 830, 832 (8th Cir. 2005), we

have indicated that if such a defense were available, we would follow the Fifth Circuit's articulation of the elements of the defense. United States v. Stover, 822 F.2d 48, 50 n.3 (8th Cir. 1987). That is, the defense would require proof of the following four elements:

> (1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]," (3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,'" and (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action and the avoidance of the [threatened] harm."

Id. (alterations in original). To be entitled to a jury instruction on a justification defense, a defendant must show "an 'underlying evidentiary foundation' as to each element of the defense," such that a reasonable person could conclude that the evidence supported the defendant's position. Hudson, 414 F.3d at 933 (quoting United States v. Kabat, 797 F.2d 580, 590-91 (8th Cir 1986)).

Poe argues that the district court should have instructed the jury on the justification defense because he faced an unlawful, imminent threat when Scott pulled her gun on him such that he had no reasonable alternative but to take it. After reviewing the record, we conclude that we need not reach the issue of whether justification is available as a defense to a violation of § 922(g) because Poe cannot satisfy the necessary elements.

No reasonable jury could find that Poe's possession of the gun on the morning of May 18 arose from a present, imminent, and well-grounded apprehension of death or serious bodily injury, because there is no evidence that Scott had threatened Poe

that morning.  Indeed, as the district court noted, Poe "experienced so little apprehension that he actually considered giving Ms. Scott her firearm back."  In Stover, we held that there was no imminent danger where the defendant seized a gun from his assailant and retained it approximately 10 minutes after the assailant fled the scene.  822 F.2d at 50.  Poe was in possession of the gun overnight, long after the threatened harm had subsided.  In addition, Poe had reasonable alternatives to possessing the gun on May 18 because he could have disposed of or abandoned the gun at any time after leaving Scott's apartment the night before.  See Hudson, 414 F.3d at 934; see also United States v. Singleton, 902 F.2d 471, 473 (6th Cir. 1990) ("Corollary to the requirement that the defendant have no alternative to possession of the firearm is the requirement that the defendant get rid of the firearm as soon as a safe opportunity arises.").

We affirm Poe's conviction.

_____