# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1732
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Dinkins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 9, 2017
Filed: May 26, 2017
[Unpublished]

_____

Before SMITH,[1] GRUENDER, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Robert Dinkins was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). In his defense, Dinkins argued that

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

he was justified in possessing the firearm for personal and neighborhood safety. The district court[2] rejected this defense and found Dinkins guilty during a bench trial. The court sentenced him to 180 months' imprisonment—the mandatory minimum—and two years' supervised release. We affirm.

## I. *Background*

On June 4, 2015, police officers observed "a silver scooter being ridden by [Dinkins] . . . fail[] to stop at [a] stop sign" and pursued Dinkins to conduct a traffic stop. Dinkins failed to pull over, ran another stop sign, and eventually crashed his scooter. When the officers helped Dinkins to his feet, a firearm fell from Dinkins's waistband. The officers determined that Dinkins was a convicted felon and arrested him for resisting arrest and unlawful possession of a firearm. Dinkins was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

Dinkins lives in the Walnut Park neighborhood of St. Louis, which he calls "one of the most dangerous . . . in the city." Dinkins incorporated the New East Afrika Allegiance Council (NEAAC), a nonprofit organization that he formed "to organize, provide security, and detective activity for the community" and which is "engaged in all forms of self-defense activities" and "engaged in addressing the combat and criminal activity generally." At his bench trial, Dinkins testified that he possessed the gun because he retrieved it after an associate told him that "a gun was stolen from [an employee of the NEAAC]" and the gun was located in an alley. Feeling "concerned about the public" and his own safety, Dinkins immediately believed his retrieval and possession of the firearm was lawful because he "had the corporation" and "felt like [this] was the opportunity to do [his] job."

---

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

Dinkins asserted that his possession of the firearm was justified, arguing that he "acted [out of] self-defense" because he feared that the firearm "could [be used to] commit[] a crime against [himself] or the individuals in the community." Dinkins argued that he was "under imminent threat . . . of death or serious bodily injury"; "did not place himself negligently or recklessly into" a situation in which it was probable that he would be forced to commit a crime; "had no reasonable . . . alternative to violating the law"; and there was "a direct causal relationship between the action that he took and the harm that he was trying to avoid."

The district court rejected Dinkins's justification defense, finding that Dinkins "had every opportunity to report the firearm as being stolen to the police" and "could have directed the owner of the firearm to go retrieve it. However, he chose to do it himself." The district court found Dinkins guilty of unlawful possession of a firearm and sentenced him to 180 months' imprisonment, followed by a two-year term of supervised release. Dinkins appeals the district court's denial of his justification defense, arguing that his testimony presented sufficient proof of all four elements of the defense.

## II. *Discussion*

"'We review de novo a district court's decision whether there is sufficient evidence to submit an affirmative defense to a jury.' Thus far, '[t]his circuit has not recognized a defense of legal justification to a violation of § 922(g).'" *United States v. El–Alamin*, 574 F.3d 915, 925 (8th Cir. 2009) (alteration in original) (quoting *United States v. Hudson*, 414 F.3d 931, 933 (8th Cir. 2005)). Although we have not yet recognized the justification defense, we have outlined the four elements a defendant must demonstrate if a district court were to permit the defense:

1) [that] he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; 2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act; 3) that he had no reasonable, legal alternative to violating the law; and 4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

*United States v. Bonilla–Siciliano*, 643 F.3d 589, 591 (8th Cir. 2011) (alteration in original) (quoting *El–Alamin*, 574 F.3d at 925).

"To be entitled to a jury instruction on a justification defense, a defendant must show an underlying evidentiary foundation as to each element of the defense, such that a reasonable person could conclude that the evidence supported the defendant's position." *United States v. Green*, 835 F.3d 844, 855 (8th Cir. 2016) (quoting *United States v. Poe*, 442 F.3d 1101, 1104 (8th Cir. 2006)); *see also Hudson*, 414 F.3d at 933 ("We have never held, however, that a defense must be submitted to the jury even when it cannot be said that a reasonable person might conclude the evidence supports the defendant's position." (quoting *United States v. Kabat*, 797 F.2d 580, 591 (8th Cir. 1986))). Here, Dinkins failed to present evidence that could allow a reasonable person to conclude that he is entitled to the justification defense because, as a matter of law, Dinkins cannot establish the first element.

Under the first element, Dinkins "was required to show that []he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *Hudson*, 414 F.3d at 933. Specifically, Dinkins was required to "show that a real and specific threat existed *at the time of the unlawful possession*." *Id.* (quoting *United States v. Perrin*, 45 F.3d 869, 874 (4th Cir. 1995)). However, Dinkins merely asserted a generalized

fear of a potential future threat (he feared that the firearm "could have [been used to] commit[] a crime"). Thus, as a matter of law, Dinkins failed to show a real and specific threat existed at the time of his unlawful possession. Our analysis need proceed no further as the facts clearly refute Dinkins's assertion of an imminent threat. The district court did not err in rejecting Dinkins's justification defense.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____