# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3103
_____

United States of America

*Plaintiff - Appellee*

v.

Kenneth Jay Still

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Western

_____

Submitted: May 14, 2021
Filed: July 27, 2021

_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Kenneth Jay Still entered a conditional plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), and

924(a)(2). The district court[1] sentenced him to 120 months' imprisonment, the statutory maximum. Still argues that the district court erred in excluding his justification defense and in imposing an unreasonable sentence. We affirm.

## I. Background

Still shared a Council Bluffs, Iowa, apartment with his common-law wife and her two grandchildren. Devon Theisen, the children's father, routinely stored his personal belongings in the apartment and occasionally stayed there. The apartment was located in a fourplex. Residents enter the fourplex through an outer door leading into a vestibule from which they can access either of two ground-floor apartments or ascend the stairs to access the two second-floor apartments.

Theisen was visiting with friends in a second-floor apartment in the fourplex on the morning of October 7, 2018, while Still and Lesley Cox, a fellow apartment complex resident, were outside loading Theisen's children into a vehicle. Theisen yelled down to Still through the apartment window, asking to retrieve certain belongings from Still's unit. Still denied the request. Theisen then descended from the second-floor apartment, accompanied by two friends. Following a heated exchange between Still and Theisen, Still told Theisen that he would gather Theisen's belongings and give them to Cox to pass on to Theisen. Still and Cox then entered Still's apartment and began gathering Theisen's property.

According to Still, Theisen forced open the door to Still's unit while Still and Cox were inside. Thereafter, Theisen grabbed softball-sized chunks of concrete from a flower bed located just outside the building. Theisen hurled two chunks at Still, at least one of which flew through the outer door before crashing into the interior walls

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

of Still's apartment. Neither rock struck Still. Still subsequently obtained a 12-gauge shotgun, which he pointed toward the outer door. Theisen grabbed a third chunk of concrete and prepared to throw it. Still then pulled the shotgun's trigger and shot Theisen in the face, killing him. Still asserts that he intended to fire only a "warning shot" and that he was not aiming at Theisen when he fired. Still thereafter drove away from the scene with the children and shotgun in-tow while witnesses called law enforcement and emergency services.[2]

Still drove approximately 0.8 miles to the home of his nephew Mark Jones, a convicted felon. Still dropped off both the children and the shotgun. Jones subsequently transferred the shotgun to another convicted felon, Jimmie Aherns. Aherns transported the shotgun, encased in a camping chair sheath, via bicycle to yet another man. Aherns eventually regained possession of the shotgun, which he surrendered to law enforcement.

Still later surrendered himself to the police. Because Still had previous felony convictions, he was charged with the unlawful possession of a firearm. Still sought to raise a justification defense, which the government moved to exclude from trial. At the motion hearing, both Still and the government offered professional statements describing the evidence they planned to offer on the justification defense. The district court granted the motion to exclude, ruling that Still "was not under an unlawful and present imminent and pending threat" following the shooting that would justify his

---

[2]Some facts are disputed. The government contends that Still or Cox failed to latch the apartment door, which then opened, giving Theisen and his friends some access to the unit. The parties also dispute how Still obtained the shotgun. Still asserts that he wrested the firearm away from Theisen; the government avers that the shotgun had been in Still's possession for a number of months and was stored in his living room at the time of the fatal confrontation.

continued possession of the shotgun.[3]  The district court also concluded that there were other legal alternatives available to Still at the time.  As set forth above, Still subsequently entered a conditional guilty plea.

In calculating Still's sentencing range under the United States Sentencing Guidelines (Guidelines or U.S.S.G.), the district court applied the cross-reference to Section 2A1.3(a) pursuant to Section 2K2.1(c)(1)(B), based on Still's possession of the firearm in connection with another offense in which death resulted.  The district court determined that Still committed voluntary manslaughter, resulting in a base offense level of 29.  See U.S.S.G. § 2K2.1(c)(1)(B); id. § 2A1.3(a).  The district court then adopted the Presentence Report's two-level increase for obstruction of justice, id. § 3C1.1, and three-level reduction for acceptance of responsibility, id. § 3E1.1.  With a total offense level of 28 and a criminal history category of V, Still's sentencing range was 130 to 162 months' imprisonment.  The district court indicated that it would have varied upward had it concluded that the manslaughter cross-reference did not apply.  The district court noted that the statutory maximum for the offense was 120 months' imprisonment and stated that the "seriousness of the offense [was] overwhelming under the circumstances."  The district court therefore sentenced Still to 120 months' imprisonment.

## II. Discussion

### A. Justification Defense

We review *de novo* the district court's conclusion that there was insufficient evidence to submit an affirmative defense to the jury.  United States v. Hudson, 414 F.3d 931, 933 (8th Cir. 2005).  This circuit has not recognized an affirmative defense

---

[3]The district court based its decision on only the events following the shooting, acknowledging dispute surrounding the events leading up to the shooting.

of legal justification to a violation of 18 U.S.C. § 922(g). Id. Were the defense available, however, the defendant would be required to establish, in relevant part, "that he had no reasonable, legal alternative to violating the law." Id. (citation omitted). To be "entitled to a jury instruction concerning an available justification defense," the defendant must show "an underlying evidentiary foundation as to each element of the defense, regardless of how weak, inconsistent or dubious the evidence on a given point may seem." Id. (internal quotation marks and citation omitted); see also United States v. Penn, 969 F.3d 450, 455–56 (5th Cir. 2020) (collecting cases and noting that defendants are entitled to a justification instruction only when the circumstances of their offense are extraordinary).

We conclude that Still's professional statement failed to show that he lacked a reasonable, legal alternative to violating the law. We agree with our sister circuits that have held that "[c]orollary to the requirement that the defendant have no alternative to possession of the firearm is the requirement that the defendant get rid of the firearm as soon as a safe opportunity arises." See United States v. Poe, 442 F.3d 1101, 1104 (8th Cir. 2006) (parenthetically quoting United States v. Singleton, 902 F.2d 471, 473 (6th Cir. 1990)); see also United States v. Ricks, 573 F.3d 198, 203 (4th Cir. 2009) ("We agree with the government that a defendant seeking a justification instruction must produce evidence that he took reasonable steps to dispossess himself of the weapon once the threat entitling him to possess it abated." (internal quotation marks omitted)); cf. Penn, 969 F.3d at 456 (defendant must prove "that he possessed the firearm only during the time of danger," meaning that he must have "act[ed] promptly to rid himself of the firearm once the circumstances giving rise to the justification subside[d]").

Still had the opportunity to safely and lawfully dispossess himself of the firearm after the alleged threat dissipated. Accepting as true Still's assertion that Theisen's associates remained in or around the apartment building and that remaining on-site to wait for the police was thus not reasonable, Still nonetheless could have

called the police upon driving away from the apartment building. Cf. United States v. Green, 835 F.3d 844, 856 (8th Cir. 2016) (when a defendant could easily have called the police, he has not shown that he lacked a legal, reasonable alternative). Although the government did not present evidence that Still himself owned a cell phone, it appears that most Americans own some variety of cell phone. See Stephen J. Blumberg & Julian V. Luke, Nat'l Ctr. for Health Stats., Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, July – December 2018 5 (2019), https://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless201906.pdf (concluding that 92.9% of noninstitutionalized American adults owned some form of cell phone in the last half of 2018). Regardless of whether he could have called on a phone of his own, Still could have stopped and used a phone at a gas station, a restaurant, or some other business open to the public, asked someone there to call the police, or inquired therein about the nearest police station's location. A phone call to the police would presumably have yielded information about the nearest police station—located only 0.7 miles away from the apartment complex. Had Still then surrendered the weapon at the station, "perhaps we might have been forced to weigh the relative merits of greater expediency versus greater safety." Gov't of V.I. v. Lewis, 620 F.3d 359, 369 (3d Cir. 2010).

Still did not avail himself of this alternative, however. Instead, he continued to possess the firearm so that he could deliver it to Jones's house, suggesting that Still may have been attempting to conceal it. Cf. id. at 367 ("[The defendant's] own testimony demonstrated that he maintained possession of the firearm in order to hide it and avoid responsibility for the shooting . . . ." (internal quotation marks omitted)). We cannot conclude that Still lacked any reasonable, legal alternative to possessing the shotgun in-transit to his felon-nephew's house. See United States v. Gant, 691 F.2d 1159, 1163 n.9 (5th Cir. 1982) ("[C]ontinued possession beyond the time that the emergency exists will defeat the [justification] defense[]."). Still's continued possession of the shotgun and failure to properly dispose of it is therefore fatal to his

would-be justification defense.  See United States v. Lomax, 87 F.3d 959, 962 (8th Cir. 1996) ("Moreover, a defendant cannot claim justification as a defense for an illegal action that he chose to pursue in the face of other potentially effective, but legal, options.").

Assuming without deciding that a justification defense to prosecution under 18 U.S.C. § 922(g) is available, we agree with the district court that Still failed to present evidence sufficient to warrant denying the government's motion to exclude the justification defense.  See Hudson, 414 F.3d at 934.

## B. Sentencing

We proceed in two steps when reviewing a sentence.  We first review for procedural error, and then, if there is none, we consider the substantive reasonableness of the sentence imposed.  Gall v. United States, 552 U.S. 38, 51 (2007).

## 1. Procedural Error

Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  Id.  When reviewing for procedural error, we review *de novo* the district court's interpretation and application of the Guidelines, and we review for clear error its factual findings.  United States v. Godfrey, 863 F.3d 1088, 1095 (8th Cir. 2017).

Still argues that the district court committed procedural error when it concluded that he had committed voluntary manslaughter and when it therefore applied the

cross-reference. See U.S.S.G. § 2K2.1(c)(1)(B); id. § 2A1.3(a). Guidelines Section 2K2.1(c)(1)(B) directs the district court, in relevant part, to apply "the most analogous offense guideline" from Section 2A1 "[i]f the defendant used or possessed any firearm . . . cited in the offense of conviction in connection with the commission or attempted commission of another offense" and "death resulted." Section 2A1.3(a) provides that voluntary manslaughter results in a base offense level of 29. "In the absence of a conviction for another felony offense, the government must prove by a preponderance of the evidence all of the essential elements of the underlying felony offense, including the absence of any defenses." United States v. Tunley, 664 F.3d 1260, 1262 (8th Cir. 2012) (citation omitted).

Even if applying the voluntary manslaughter cross-reference was procedural error, we conclude that such error was harmless because the district court stated that it would have varied upward had it not applied the cross-reference. See United States v. Martinez, 821 F.3d 984, 988–89 (8th Cir. 2016) (district court's incorrect application of the Guidelines is harmless error when the court "specifies the resolution of a particular issue did not affect the ultimate determination of a sentence, such as when the district court indicates it would have alternatively imposed the same sentence even if a lower guideline range applied" (internal quotation marks and citations omitted)). The district court noted at sentencing that "had the Court not concluded that the cross-reference would apply, then the Government would have been appropriate in asking the Court to vary upward in order to go to the statutory maximum because of the seriousness of the offense and because of the serious effects of what happened that day." The district court further concluded that "a variance upward would be appropriate if the Court had not already concluded that the cross-reference to manslaughter applie[d] under the circumstances of this case." See United States v. Goldsberry, 888 F.3d 941, 944 (8th Cir. 2018) ("We need not address the substance of [the defendant's] claim because the district court specifically noted that it would not have changed the overall sentence even had the second assault conviction been a non-qualifying offense . . . .").

Still next argues that the district court committed procedural error when it relied on Jones's grand jury testimony to conclude that an obstruction of justice enhancement was appropriate. "We have repeatedly upheld the consideration of grand jury testimony at sentencing; it 'has indicia of reliability because it was given under oath and subject to the penalties of perjury.'" United States v. Cross, 888 F.3d 985, 993 (8th Cir. 2018) (quoting United States v. Morin, 437 F.3d 777, 781 (8th Cir. 2006)). Jones testified before the grand jury that Still gave him the shotgun with instructions "to get rid of it." The district court reviewed the transcript of that testimony at sentencing. Although Jones was a felon and Still lacked the opportunity to cross-examine him, "the Confrontation Clause does not apply at sentencing hearings." Id. (citation omitted). Moreover, Jones's testimony was corroborated in part by Still's own admission that he took the shotgun to Jones and "told [him] to get the gun out of the house" because of the children's presence. Still did not call any witnesses at sentencing and did not offer any evidence to rebut Jones's statements. We therefore conclude that it was not clear error for the district court to find that Still had attempted to destroy or conceal evidence and thereby to apply the obstruction of justice enhancement.

2. Substantive Reasonableness

In the absence of procedural error below, we then review the sentence for abuse of discretion. Gall, 552 U.S. at 51. "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotation marks and citation omitted). The district court possesses broad discretion "to weigh the § 3553(a) factors and assign some factors greater weight than others." Cross, 888 F.3d at 993 (citation omitted).

Still argues that his 120-month, statutory-maximum sentence was substantively unreasonable because the district court gave insufficient weight to the circumstances of the shooting, his age and health, and his acceptance of responsibility. We disagree. The district court considered all relevant factors and adequately explained its sentence. See 18 U.S.C. § 3553(a). The court described the case's circumstances as "unique" and stated, "if [Still] had not had a firearm that day, then all of these terrible things that happened that day would not have happened, at least as it turned out." The court characterized Still as "a classic example of someone that should not have been in possession of a firearm under any circumstances." The court then acknowledged that Still was likely under some duress, but determined that "it [was] a level of duress that doesn't match what happened, and so the seriousness of the offense is overwhelming under the circumstances of this particular case."

The district court also concluded that deterrence concerns outweighed any age- or health-related considerations: "I would hope at this point you're aging out of all of that [criminal conduct], but your record suggests that [adequate future deterrence] is a serious consideration." See United States v. King, 898 F.3d 797, 810 (8th Cir. 2018) ("The district court's decision not to weigh mitigating factors as heavily as [the defendant] would have preferred does not justify reversal." (quotation marks and citation omitted)). We find no abuse of discretion in the district court's ultimate conclusion that the statutory maximum sentence was appropriate because of the "seriousness of the offense" and the "serious effects of what happened that day."

Conclusion

The judgment is affirmed.

_____

-10-